[Crim. No. 2764. In Bank.—July 29, 1925.]

In the Matter of the Application of WILLIAM WILSON
for a Writ of Habeas Corpus.

[1] CRIMINAL LAW — SUFFICIENCY OF INFORMATION — JURISDICTION—
HABEAS CORPUS.—The scope of inquiry upon *habeas corpus* into
the sufficiency of an indictment or information is limited, for, al-
though the petitioner may be discharged if the pleading totally
fails to charge an offense known to the law, if there is attempted
to be stated an offense of a kind of which the court assuming to
proceed has jurisdiction, the question whether the facts charged
are sufficient to constitute an offense of that kind will not be

1. *Habeas corpus* to test indictment or information, note, L. R. A.
1918B, 1156. See, also, 12 R. C. L. 1190.

examined into; and in the application of this rule no distinction is drawn between cases where a plea of "not guilty" and cases where a plea of "guilty" is entered.

[2] ID. — BURGLARY WITH EXPLOSIVES — INTENT TO COMMIT CRIME— PLEADING.—In a prosecution for burglary with explosives, an information charging that "The said defendant . . . did then and there willfully, unlawfully, feloniously and burglariously enter that certain store building . . . and open a certain safe therein by the use of nitroglycerine or other explosives, with the intent to commit larceny," sufficiently complies with the provisions of section 464 of the Penal Code, which require, among other things, an opening or attempt to open a safe by the use of explosives with "intent to commit crime"; and it is not essential that the intended or motivating crime should be completely and entirely separate from and unconnected with the opening of the safe.

[3] ID.—FELONY—MISDEMEANOR—PUNISHMENT—STATUTORY CONSTRUCTION.—In view of the express terms of section 17 of the Penal Code, which provides that "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor," where a statute omits to declare the offense therein defined to be a felony and which does not provide that the punishment to be inflicted shall be incarceration in a state prison, only misdemeanor punishment can be imposed.

[4] ID.—BURGLARY WITH EXPLOSIVES—FELONY—PUNISHMENT IN STATE PRISON.—Section 464 of the Penal Code, pertaining to burglary by explosives, must be liberally construed and, when read together with the other provisions of chapter II, title 13, part I, of the Penal Code, must be held to prescribe, for a violation of its terms, a felony, punishable by imprisonment in a state penitentiary for not less than twenty-five nor more than forty years.

[5] ID.—ONCE IN JEOPARDY—SERVICE OF SENTENCE—TRIAL.—The constitutional guarantee relating to "once in jeopardy" has no application to the service of a sentence, but applies only to twice being put upon "trial" for the same offense.

[6] ID.—ERRONEOUS RESENTENCE — ONCE IN JEOPARDY — HABEAS CORPUS.—Where a person is convicted of burglary with explosives and is properly incarcerated in the state prison but, due to a misconception of the law, he is returned to the superior court of the county where he was convicted and is resentenced to the county jail, he is not entitled to his release on *habeas corpus* on the plea of "once in jeopardy," but the court may direct that he be committed to the restraint or custody of the proper person.

---

(1) 29 **C. J.**, p. 42, n. 33.   (2) 9 **C. J.**, p. 1034, n. 16.   (3) 16 **C. J.**, p. 56, n. 69.   (4) 9 **C. J.**, p. 1092, n. 71.   (5) 16 **C. J.**, p. 233, n. 77.   (6) 29 **C. J.**, p. 176, n. 41.

3. See 7 **Cal. Jur.** 870; 13 **Cal. Jur.** 232.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody after resentence to the County Jail. Writ discharged and petitioner remanded to custody.

The facts are stated in the opinion of the court.

William Wilson, *in pro per.*, for Petitioner.

Wm. R. McKay, District Attorney, and Sidney J. W. Sharp, Deputy District Attorney, for Respondent.

LAWLOR, J.—On *habeas corpus.* Petitioner was charged by information in the county of Kings with a violation of section 464 of the Penal Code, namely, with the crime of burglary with explosives. On February 21, 1922, he pleaded guilty. For the said offense petitioner was sentenced to confinement in the state prison at San Quentin. About March 1, 1922, he was transferred from said penitentiary to the state prison at Folsom. On or about December 29, 1924, he was ordered returned to the superior court of Kings County for resentence upon the claim that the original sentence to the state prison was void, as burglary with explosives was construed to be a misdemeanor rather than a felony. Accordingly he was, on the thirty-first day of December, 1924, resentenced by the superior court to be confined in the county jail of Kings for twenty-five years.

The offense, as already indicated, is prescribed by section 464 of the Penal Code, quoted elsewhere, and deals with the opening of a safe or other secure place by the use of explosives with intent to commit crime.

Several grounds are urged in support of the petition which, in effect, may be stated as follows:

(1) That the information fails to state a public offense for it does not follow the language of the statute and neglects to charge a "breaking" in addition to an "entering."

(2) That it fails to state a public offense in that it does not specify "what crime the defendant intended to commit when he entered the building and before he dynamited the safe therein."

(3) That he "has been once in jeopardy, by reason of his illegal confinement in a state prison for a substantial portion of his term on a void judgment."

(4) That his confinement in the county jail constitutes cruel and unusual punishment in violation of section 6, article I, of the constitution.

Respondent's position is thus set forth:

"(1) The information under which respondent was convicted of the offense of burglary with explosives states a public offense.

"(2) Petitioner has not been once in jeopardy by reason of his imprisonment in state's prison prior to his resentence to the county jail.

"(3) Burglary with explosives, by reason of the nature of the action which constitutes said offense, must be denominated a felony *per se,* and the omission in the statute of the place of confinement as a punishment therefor, or the failure to denominate the same as a felony, is without moment in the present instance.

"(4) The imprisonment of the defendant in the county jail is not cruel and unusual punishment under section six of article one of the Constitution of the State of California."

[1] (1) As to the sufficiency of the information, we quote from 13 Cal. Jur., page 232, section 14: "The scope of inquiry upon *habeas corpus* into the sufficiency of an indictment or information is limited, for, although the petitioner may be discharged if the pleading totally fails to charge an offense known to the law, if there is attempted to be stated an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into."

It was declared in *In re Kavanaugh,* 180 Cal. 181, 182 [180 Pac. 533]: "The information in the superior court upon which the judgment against petitioner is based clearly attempted to charge the felony defined by section 476a of the Penal Code. Whether the specific facts alleged as constituting the particular offense failed to sufficiently show the public offense attempted to be charged is a question which cannot be considered on *habeas corpus* under the well-settled rule of this jurisdiction. (*Matter of Ruef,* 150 Cal. 665 [89 Pac. 605]; *Ex parte Greenall,* 153 Cal. 770 [96 Pac. 804].)"

In the application of this rule no distinction is drawn between cases where a plea of "not guilty" and cases where

a plea of ''guilty'' is entered. *In re Cook*, 13 Cal. App. 399, 403 [110 Pac. 352, 354], declares: ''We do not intend to be understood as saying that, if the only offense sought to be charged against the prisoner was that of an attempt to escape from a prison, the indictment would not have been compelled to yield to the claims of a demurrer; but there was no demurrer, and therefore, whatever defects might characterize the statement of the offense to which the prisoner *pleaded guilty* were waived by said plea. His plea, in other words, amounted to an admission that the offense of which he thus confessed his guilt was within the language of the indictment. As is said in *In re Myrtle*, 2 Cal. App. 383 [84 Pac. 335], the indictment, taken with the plea of the prisoner, establishes a case of attempt to escape from a prison as completely as if it had in fact been specifically alleged in the indictment that the prisoner had made an attempt to escape.'' (Italics added.)

The information filed herein comes clearly within this rule and its sufficiency cannot now be questioned or gone into on *habeas corpus*. Moreover, it is significant to note that the information incorporated by reference the code section that defines and describes the offense of burglary with explosives.

[2] (2) We perceive no merit in petitioner's second contention, for the information clearly charged, among other things, that petitioner was actuated by an intent to commit larceny. The information reads, in part: ''The said defendant . . . did then and there willfully, unlawfully, feloniously and burglariously enter that certain store building . . . and open a certain safe therein by the use of nitroglycerine or other explosives, with the intent to commit larceny, . . .'' In our view, it is immaterial whether or not ''the phrase 'with the intent to commit larceny' must be read with the previous sentence'' of the information, for the charging part of the information expressly alleges that the petitioner ''with the intent to commit larceny'' entered the building and opened the safe with an explosive. The allegation with intent to commit larceny would include grand or petit larceny. This allegation, in our opinion, was a sufficient compliance with the provisions of section 464, which require, among other things, an opening or attempt to open a safe by the use of explosives with ''intent to com-

mit crime." We do not deem it essential, as contended by petitioner, that the intended or motivating crime should be completely and entirely separate from and unconnected with the opening of the safe; undoubtedly, the legislature had in mind primarily an intended or motivating crime that would follow the opening of the safe—that is, a looting of the safe subsequent to the opening thereof by the employment of explosives. An examination of the section satisfies us that there is no warrant for petitioner's argument that the phrase "with intent to commit crime" refers to a crime "separate and disconnected from the opening of the safe" and the stealing of the contents thereof.

Another answer to this contention is the one considered under the preceding point—that if the pleading purports to charge a known crime its sufficiency cannot be gone into on *habeas corpus.*

(3) The real question in controversy is discussed in the third contention of petitioner, and that question is, Does the failure of section 464 to expressly declare the offense therein defined a *felony,* or to expressly provide that the punishment for a violation thereof shall be imprisonment, for the prescribed period, in a *state prison,* bring the offense within that class of crimes commonly designated "misdemeanors," or, in the face of either or both of these omissions, may said offense nevertheless be held to be a felony?

The district court of appeal, first appellate district, division two, in the *Matter of the Application of Charles Schiaffino for a Writ of Habeas Corpus,* 70 Cal. App. 65 [232 Pac. 719], has passed upon this identical question and held the offense defined by section 464 to be a misdemeanor. The decision was based upon section 17 of the Penal Code, which reads, "A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime is a misdemeanor . . . ," and *Matter of Humphrey,* 64 Cal. App. 572 [222 Pac. 366], and cases therein cited. The district court of appeal in the *Matter of Schiaffino, supra,* however, stated: "Though it seems an absurdity that one convicted of a crime which is punishable by imprisonment for not less than twenty-five years should be confined in a county jail rather than in the state prison, the language of the section does not permit any other interpretation."

[3] In view of the express terms of section 17 of the Penal Code, it may be conceded that under a statute omitting to declare the offense therein defined to be a felony and which does not provide that the punishment to be inflicted shall be incarceration in a state prison, only misdemeanor punishment can be imposed. [4] But it is clear to us that reading together the provisions of chapter II, title 13, part I, of the Penal Code (secs. 459–464), section 464 must be held to prescribe for a violation of its terms punishment by imprisonment in a state prison.

Sections 459, 460, 461, 463, and 464 read as follows:

"459. 'Burglary' defined. Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, railroad car, mine, or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary."

"460. Burglary defined. 1. Every burglary of an inhabited dwelling-house or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree.

"2. All other kinds of burglary are of the second degree.

"3. This section shall not be construed to supersede or affect section four hundred sixty-four of the Penal Code."

"461. Punishment for burglary. Burglary is punishable by imprisonment in the state prison as follows:

"1. Burglary in the first degree for not less than five years.

"2. Burglary in the second degree for not less than one or more than fifteen years.

"3. Burglary in the third degree for not more than five years."

"463. 'Night-time' defined. The phrase 'night-time,' as used in this chapter means the period between sunset and sunrise."

"464. Burglary with explosives. 1. Any person who, with intent to commit crime, breaks and enters, either by day or by night, any building, whether inhabited or not,

and opens or attempts to open any vault, safe or other secure place by the use of nitroglycerine, dynamite, gunpowder or any other explosive, shall be deemed guilty of burglary with explosives.

"2. Penalty. Any person duly convicted of burglary with explosives shall be punished by imprisonment for a term of not less than twenty-five nor more than forty years."

Prior to the adoption of section 464 (Stats. 1917, p. 273), section 460 divided burglary into two degrees—burglary of the first and burglary of the second degree. In the introductory sentence of section 461 it is provided that "burglary is punishable by imprisonment in the state prison." Then follows the punishment for burglary of *three* degrees, first, second, and *third,* but as to the latter degree we have nowhere found it to be defined as a crime. Section 464 creates a new form of burglary in addition to the forms defined and made punishable by sections 460 and 461, respectively, namely, "burglary with explosives." If, for instance, the *measure* of punishment prescribed for the latter form of burglary appeared in place of or following subdivision 3 of section 461 there could be no question that the *kind* of punishment would be the same as that prescribed in the introductory sentence of that section—imprisonment in the state prison. In other words, the *kind* of punishment for each of the forms of burglary would be found exclusively in the introductory language of section 461. The question then arises, whether the fact that burglary by explosives appears in a separate and distinct section which omits to prescribe the *kind* of punishment would preclude the application of the introductory language of section 461 to section 464 in determining the *kind* of punishment to be imposed under the latter section. In our view, each section of the chapter should be read with the others and all of them construed as though constituting a single section (*People* v. *Pryal,* 25 Cal. App. 779 [147 Pac. 114, 115]). Thus construed the *kind* of punishment under section 464 would be imprisonment in the state prison.

It is said in Bishop on Statutory Crimes, page 61: "While plainly, where the division is only made by an editor, it can have no effect on the interpretation, it is believed not to be greatly different where it is the work of the draftsman, and

is retained in the statute as passed. In other connections and from various cases we see that, while our courts sometimes speak of the sections as though the distinction had something to do with the interpretation, at other times nothing is perceptible from which such inference could be drawn. On the whole, little depends on this matter, beyond mere convenience of citation."

Any other construction of the chapter would be opposed to the provisions of section 4 of the Penal Code, which read: "The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a 'view to effect its objects and to promote justice." (*Snell* v. *Bradbury,* 139 Cal. 379 [73 Pac. 150] ; *People* v. *Soto,* 49 Cal. 67, 70.)

It is apparent that the criminal act defined in section 464 is more aggravated in character than those enumerated in the preceding sections, for the use of explosives would conceivably be attended with greater risk to life, bodily safety and property. Moreover, while the legislature has complete authority within the constitutional limitation (art. I, sec. 6, Const.) to fix the kind and quantity of punishment, in the absence of a clear and unequivocal expression the court would hesitate to hold that it was intended to prescribe for so grave an offense a misdemeanor punishment having a minimum of twenty-five and a maximum of forty years. For to do so would be to impute to the legislature a purpose entirely novel—the *quantum* of punishment bearing no natural nor reasonable relation to the kind of punishment contended for. And in our opinion such considerations properly enter into the question of the intention of the legislature.

The cases relied upon in support of *In re Charles Schiaffino for a Writ of Habeas Corpus,* 70 Cal. App. 65 [232 Pac. 719], are *Union Ice Co.* v. *Rose,* 11 Cal. App. 356, 360 [104 Pac. 1006], and *In re Humphrey,* 64 Cal. App. 572 [222 Pac. 366]. *Union Ice Co.* v. *Rose, supra,* involved a prosecution for a violation of the Cartwright Act (Stats. 1907, p. 984). The court, after citing section 17 of the Penal code, declared: "The law does not define misdemeanors as those offenses punishable by fine or imprisonment in the *county or city jail,* but as those for which the penalty im-

posed, whatsoever it may be, is other than *death* or imprisonment in the *state prison*. The conclusion would therefore seem irresistible that, since the offense is clearly a crime for which a penalty is imposed, the punishment for which, however, is not that prescribed for a felony, it must necessarily and logically follow that it is a misdemeanor. As said in *Pillsbury* v. *Brown,* 47 Cal. 480: 'A misdemeanor is an act or omission for which a punishment other than death or imprisonment in the state prison, is denounced by law.' ''

*In re Humphrey, supra,* involved a violation of the Wright Act (Stats. 1921, p. 79), which adopted by reference certain provisions of the Volstead Act. There, also, the court properly held, in effect, that the act, in omitting to declare the offense a felony in terms, or making the punishment imprisonment in the state prison, under section 17 the crime was only punishable as a misdemeanor.

These authorities are clearly distinguishable from the case at bar. The respective acts in those cases stood entirely alone and unrelated to any other provision which in terms prescribed the kind of punishment and hence resort was necessarily had to the omnibus provisions of section 17; while in the case at bar it is held that the chapter of which section 464 is a part, taken in its entirety, does in terms prescribe the kind of punishment and therefore section 17 has no application.

Section 464 is, therefore, held to prescribe a felony, punishable by imprisonment in the state penitentiary for not less than twenty-five nor more than forty years. It follows that *In re Charles Schiaffino for a Writ of Habeas Corpus, supra,* must be and is overruled.

[5] With respect to the claim of petitioner that because he was confined for a time in the penitentiary under the judgment of conviction he has been once in jeopardy, this may be said: First, the constitutional guarantee has no application to the service of a sentence, but applies only to twice being put upon *trial* for the same offense. (*In re Harron,* 191 Cal. 457, 466 [217 Pac. 728]; 7 Cal. Jur. 943.) [6] And, second, the effect of this decision is that the incarceration in the state prison was proper. It is true that a misconception of the law has resulted in the execution of the judgment being interrupted, but that is a circumstance which the state board of prison directors may consider.

(4) In view of the conclusion that the sentence must be served in the penitentiary it will not be necessary to discuss petitioner's final contention that his confinement in the county jail constitutes cruel and unusual punishment within the meaning of the constitutional inhibition.

We quote section 1493 of the Penal Code as bearing on the judgment to be pronounced on the writ. The section reads: "In cases where any party is held under illegal restraint or custody, or any other person is entitled to the restraint or custody of such party, the judge or court may order such party to be committed to the restraint or custody of such person as is by law entitled thereto."

Accordingly, the writ is discharged and the petitioner remanded to the custody of the respondent sheriff; and the superior court of the county of Kings is hereby ordered to vacate and set aside the judgment heretofore pronounced and entered to the effect that petitioner be imprisoned in the county jail of said county, and that a new judgment be pronounced and entered against petitioner according to law and the views herein expressed.

Richards, J., Waste, J., Seawell, J., Shenk, J., Lennon, J., and Myers, C. J., concurred.