[Crim. No. 3488. In Bank.—May 23, 1932.]

In the Matter of the Application of MARTIN A. LEACH for a Writ of Habeas Corpus.

Archibald M. Johnson, Henry G. Bodkin and A. A. Deligne for Petitioner.

U. S. Webb, Attorney-General, Ralph O. Marron, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

CURTIS, J.—Petitioner herein, claiming that he is illegally imprisoned and restrained of his liberty by the sheriff of the county of Los Angeles, filed herein his petition for a writ of *habeas corpus* for the purpose of securing his release from the alleged illegal imprisonment. His first petition for said writ was filed on July 13, 1931. In that petition he alleged that he was found guilty upon twenty-six counts of the indictment filed against him in the Superior Court of the County of Los Angeles; twelve of said counts charged him with the crime of grand theft, and fourteen of said counts charged him with the violation of the Corporate Securities Act; that on appeal to the District Court of Appeal said court affirmed the judgment of conviction as to three of said counts charging grand theft and as to thirteen of said counts charging a violation of the Corporate Securities Act, and reversed said judgment as to the balance of said counts (*People* v. *Leach,* 106 Cal. App. 442 [290 Pac. 131]); that petitioner, after filing a petition for a rehearing of the decision of the District Court of Appeal, and after the same had been denied, attempted to file in this court a petition for a hearing and transfer of said action to this court, but that this court refused to entertain or consider the same on its merits on the ground that it had not been filed within the time

provided by the Constitution and statutes pertaining thereto, and as a result thereof the decision of the District Court of Appeal had become final. The petition for the writ of *habeas corpus* as first filed herein then proceeded to set forth the grounds upon which petitioner contended that his imprisonment was illegal which we will later refer to more fully in the course of this opinion. Before said petition was heard by this court it was withdrawn by petitioner. Thereafter, and on August 28, 1931, petitioner filed herein a second petition for a writ of *habeas corpus*, basing it upon the same grounds as those upon which his first petition was presented. In this second petition he referred to his first petition, and made the same a part of his second petition. The second petition further showed that after the dismissal of his first petition, petitioner applied to the superior court, in which the judgment against him had been rendered, to be admitted to probation upon the charges of which he had been convicted. The result of his application for probation was that said superior court granted petitioner probation upon all of said charges except those contained in counts three and fourteen of said indictment. Under count three petitioner was convicted of violating the Corporate Securities Act, and under count fourteen he was convicted of the crime of grand theft. By the judgment of said superior court the term of imprisonment under count fourteen was made to run consecutively with the judgment under said count three. Petitioner now contends that the provisions of the Corporate Securities Act, of which he was found guilty of violating, are unconstitutional and void, and also that section 484 of the Penal Code, defining the crime of grand theft, violates the terms of the Constitution.

We will first consider the judgment of conviction of petitioner under the Corporate Securities Act and the claim of the petitioner that the same is invalid by reason of the unconstitutionality of the provisions of that act under which he was convicted.

Count three of the indictment charges the petitioner, Martin A. Leach, and some twenty or more associates, with the violation of the Corporate Securities Act, a felony, committed as follows: "That the said Martin A. Leach (and his said associates) who were then and there officers, agents and employees of the Pacific Southwest Loan and Mortgage Cor-

poration, a corporation, did on or about the 18th day of February, 1927, wilfully, unlawfully, knowingly and feloniously sell, authorize, and direct the sale to Mrs. Annie Stimson of eleven (11) mortgage notes of the face value of One Thousand Dollars ($1000.00) each, said notes being an evidence of indebtedness of the said Pacific Southwest Loan & Mortgage Corporation, a corporation, without first having applied to, and received from the Commissioner of Corporations of the state of California, a permit authorizing the sale of said notes or any of them. Contrary to the form, force and effect of the statutes in such cases made and provided and against the peace and dignity of the People of the State of California.''

The facts in this case are quite fully stated in the opinion rendered in' the case of *People* v. *Leach, supra,* and it will not be necessary for us to set them out in any minute detail. These facts show that the petitioner was the owner of a tract of land consisting of 320 acres situated in the county of San Diego for which he paid the sum of $9,600. That he caused a corporation to be organized under the laws of the state of Delaware by the name of Pacific Southwest Loan and Mortgage Corporation, of which he was the owner of a large amount, if not in fact practically all, of its capital stock. This corporation will be referred to herein as the Mortgage Corporation. Thereafter he conveyed said real property to this corporation in exchange for 12,500 shares of its preferred stock and 3,200 shares of its common stock of the par value of ten dollars per share. One hundred and sixty acres of said real property were then subdivided into blocks and lots 50 by 150 feet in size, but as the map thereof was never accepted by the planning commission, all descriptions of lots were by metes and bounds. In the meantime the National Loan Company of Los Angeles had been organized, and Leach became the sole owner of all of its stock. We will refer to this corporation as the Loan Company. The plan was then evolved by Leach of having the Mortgage Corporation execute to the Loan Company a large number of separate mortgages each securing the payment of a promissory note either for $500 or $1,000, executed by the Mortgage Corporation in favor of the Loan Company, and secured by a mortgage upon one lot when the note secured was for $500, and upon two lots in said subdivision when the note was for

$1,000. These notes and the mortgages securing them were delivered to the Loan Company under an agreement that it would sell, or attempt to sell the same, and upon a sale being made it would pay to the Mortgage Corporation fifty per cent (later reduced to forty per cent) of the face of each note, the Loan Company retaining the excess as compensation for its services in making said sales. The Loan Company employed a force of salesmen and carried on an intensive campaign to dispose of said mortgage notes to the public, and among the sales made was one to Mrs. Annie Stimson of eleven of said mortgage notes of $1,000 each. This sale forms the basis of count three of the indictment under which Leach was convicted, and from the judgment of conviction thereof, he now seeks to be released by this proceeding.

As will be observed by the reading of count three of the indictment above, the petitioner was charged with the violation of the Corporate Securities Act in the sale of eleven mortgage notes, issued by the Mortgage Corporation without said corporation having first received a permit for such sale from the commissioner of corporations. The different types of securities issued by corporations coming under the ban of the Corporate Securities Act are designated and described in subdivision 7 of section 2 of the act, which provides, in part, as follows: "The word 'security' includes: . . . (c) all bonds, debentures, and evidences of indebtedness issued by any company . . . excepting therefrom . . . bills of exchange and promissory notes not offered to the public by the drawer, maker or underwriter thereof, and all mortgages and deeds of trust of property situated in this state executed to secure the payment thereof. . . . " It is this provision of the act which, when applied to the facts charged against petitioner, he contends is in violation of both our state and federal Constitutions.

It is first contended that under this section of the Corporate Securities Act, specifying promissory notes issued by a corporation and secured by a mortgage upon real property as a class of property which cannot be sold or negotiated except after a permit has been issued by the corporation commissioner authorizing such sale, a corporation is, in effect, denied the right to sell and dispose of a note secured by a mortgage upon its real property even though the transaction involved is simply between the corporation and an individual

who may desire to make a loan to the corporation upon its promissory note secured by a mortgage upon its property. If the provision of the act has such effect, without question it runs counter to those fundamental provisions of our organic law which have for their purpose the protection of property and the right of the owner thereof to acquire, possess, transfer, and otherwise enjoy the same.

In *People* v. *Pace*, 73 Cal. App. 548 [238 Pac. 1089, 1091], it was held that the provisions of the Corporate Securities Act, requiring the owner of securities before he could make successive sales thereof to procure a permit authorizing such sales, from the corporation commissioner, were unconstitutional and void as it deprived the owner of the right to dispose of his own property where the sale thereof might require "repeated and successive transactions". In so holding the court pointed out the general provisions of said act defining the powers of the commissioner in issuing permits thereunder, which gave to the commissioner absolute authority under certain conditions to refuse a permit to a person applying for the same, and that the effect of such refusal would be to deny to such applicant the right to sell or dispose of his own property. These same provisions of the act relative to the powers of the corporation commissioner to issue permits for the sale of the securities involved in the case of *People* v. *Pace, supra,* are applicable to permits required for the sale of securities herein involved. In either case the commissioner under the act has the absolute power to deny the permit. If, therefore, the provisions of the act regulating the sale of securities by a corporation would have the effect of depriving said corporation of the right in the general course of its business to issue one or more of its promissory notes and to secure the same by a mortgage or trust deed upon its real property in case it found it necessary or desirable so to do, then said act, to that extent, would be contrary both to the spirit and direct mandate of the state and federal Constitutions. However, we think the plain reading of the act has no such effect. It applies only to securities of the class designated which are offered for sale to the public. It has no application to private or individual notes or obligations issued by a corporation. When the act explicitly excepted from its terms such securities as were "not offered to the public", it expressed the clear and une-

quivocal intent that private and individual transactions were not the subject of such legislation, but that it was concerned only with those securities which the public might be called upon to purchase. There may be certain provisions of the Corporate Securities Act which are directed in the first instance at individual transactions, but the provisions we are now dealing with are not included in that class. The general purpose and tenor of the Corporate Securities Act, as was said by the Supreme Court of the United States in the case of *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539 [Ann. Cas. 1917C, 643, L. R. A. 1917F, 514, 61 L. Ed. 480, 37 Sup. Ct. Rep. 217], in which that court sustained the constitutionality of legislation of that character are, "To protect the public against the imposition of unsubstantial schemes and the securities based upon them." If that is its purpose, and we think the authorities with scarcely an exception support that view, then we can see no real distinction between a scheme to float a bond issue by a corporation and one to place upon the market and dispose of to the public an issue of mortgage notes, even though the latter may be severally secured by liens upon separate and distinct pieces or parcels of property. Each of these two types of securities is placed under the supervision of the corporation commissioner by the Corporate Securities Act, and we can see no legal or reasonable grounds upon which the courts would be justified in drawing a distinction between them and in holding one to be a valid exercise of power by the legislature and the other contrary to constitutional restrictions. Our conclusion, therefore, upon this phase of petitioner's case is that the provisions of the Corporate Securities Act requiring a permit from the corporation commissioner before a corporation may issue and dispose of its promissory notes and other evidences of indebtedness, secured by mortgage or trust deed, apply only to such securities as may be offered to the public, and that as so construed it is not obnoxious to any provision of the state or federal Constitution.

It is next contended that the provisions of the Corporate Securities Act defining securities as evidences of indebtedness issued by any company, excepting bills of exchange and promissory notes not offered to the public, are so vague, uncertain and ambiguous as to render it unconstitutional on that account. This criticism of the act is directed to the ex-

ception which excludes bills of exchange and promissory notes "not offered to the public" from the definition of securities as they are defined in the act. Petitioner contends that the word "security" by reason of said exception used in the act is not defined with that degree of clarity and certainty required of criminal statutes creating a new offense and providing for its punishment. The gist of petitioner's argument is that the words "not offered to the public" are so uncertain, vague and indefinite that a person of ordinary intelligence cannot understand their meaning. It is not necessary to cite authorities in support of the proposition that when a statute is so vague and uncertain that a person of ordinary intelligence cannot understand its meaning, it may not be upheld as a valid statute, for as was said by this court, "So important is the liberty of an individual that it may not be taken away even from the most debased wretch in the land, except upon the conviction of a crime which has been so clearly defined that all might know in what act or omission the violation of the law should consist." (*In re Lockett*, 179 Cal. 581 [178 Pac. 134, 135].) In the case of *People* v. *Pace, supra*, at page 563, the court held that the section of the Corporate Securities Act making it unlawful for an owner of securities to sell such securities "in the course of repeated and successive transactions" without first procuring a permit from the corporation commissioner was so indefinite as to render it void. This court in *Ex parte Daniels*, 183 Cal. 636, 646 [21 A. L. R. 1172, 192 Pac. 442, 447], held that a section of the California Vehicle Act making it unlawful to travel at "an unreasonable or unsafe speed and punishing the violation of such law as a crime" was not so vague and uncertain as to render it unconstitutional. In the recent case of *People* v. *Associated Oil Co.*, 211 Cal. 93, 105 [294 Pac. 717], it was held by this court after an extensive review of the authorities upon the subject that section 8b of the Oil and Gas Conservation Act of this state (Stats. 1915, p. 1404, as amended by Stats. 1929, p. 923), declaring unlawful the "unreasonable waste" of natural gas was not so vague, uncertain and indefinite as to be devoid of any guide or standard as to what should constitute reasonable or unreasonable use of natural gas. While this was not a criminal statute, the right was given by the terms thereof to the director of the department of natural resources

to institute proceedings in the name of the people of the state to enjoin such unreasonable waste by any operator and owner of an oil or gas producing well.

The term "offered to the public", or one of similar import, is found in frequent use in the statutes of the various states which have enacted legislation like or similar to the Corporate Securities Act of this state. Our attention has been called to statutes of eleven states where such legislation is to be found. It would appear from this that the term is one of general use, and that it has a well-accepted and recognized meaning throughout many jurisdictions and especially among those dealing with corporate securities. Our attention has not been called to any instance, as shown by any reported case, where the meaning of the words "offered to the public" has ever been called in question, or where any claim or contention has been made that their meaning was vague or ambiguous. This point was not even raised by petitioner, or at least it was not considered by the court in the appeal in the case of *People* v. *Leach, supra.* We think the meaning of the words is reasonably plain and free from any serious ambiguity, and that the ordinary person dealing in this class of securities would have no real difficulty in determining their meaning, and in conforming with the requirements of the section of the act governing the issue and sale of this class of securities.

The dividing line between securities which are issued for the purpose of being offered for sale to the public and those which are not may not be readily discernible in every instance. Each case must be decided upon its own particular set of facts. No difficulty obtains, however, in the instant case against petitioner. There is no dispute in the evidence but that the mortgage notes issued by the Mortgage Company to the Loan Company, in each of which companies the petitioner was the controlling factor, were not only executed in large numbers, but were issued with the express purpose and intent to be offered, and were actually, by the petitioner through an organized force of salesmen, offered generally and sold to the public. The sale of the eleven mortgage notes to the complaining witness mentioned in the indictment in this action was not an isolated transaction between the Loan Company and said purchaser, but was only one of a large number of sales of like character made by the

petitioner to various other individuals. Petitioner seeks to limit our inquiry to the one transaction between his companies and said complaining witness, but the undisputed facts as brought out at the trial of the petitioner show that this sale was simply a part of a general scheme of the petitioner to float a large issue of mortgage notes and that they were offered and sold to any person whom petitioner or his force of salesmen might induce to invest therein. The evidence, therefore, before us made out a plain case against petitioner of offering to the public the class of securities mentioned in the act for the sale of which a permit must be obtained from the corporation commissioner.

Petitioner makes the further contention that a real estate mortgage is not a security within the purview of the Corporate Securities Act of this state. In support of this contention petitioner argues that ''The intent and purpose of the Corporate Securities Act of this state, as of all other states, was to restrict only the sale of such securities, that give the investor a right to participate in the earnings or assets of a company. It was never the intent or purpose of such laws to regulate the ordinary business transactions of an individual or a company, nor to restrict an individual or company in its right to sell or mortgage property owned by it, whether real or personal.'' This contention was made by petitioner on his appeal before the District Court of Appeal, and it was decided adversely to him. We are satisfied with the disposition which that court made of this question. It is not necessary to repeat here the discussion of the District Court of Appeal in reaching its conclusion that real estate mortgages of the class involved herein were within the purview of the Corporate Securities Act. This discussion may be found on pages 448, 449 and 450 of the reported decision of that case. (*People* v. *Leach,* 106 Cal. App. 442 [290 Pac. 131, 135].)

The objection made by petitioner that the trial court failed to send to the District Court of Appeal certain original exhibits in the case to be used in the consideration of said appeal, and that the District Court of Appeal decided said appeal without a reference to or a consideration of said original exhibits, cannot be raised in this proceeding. The District Court of Appeal had jurisdiction of said appeal, and if any error was committed by said court in its con-

sideration thereof, it cannot be corrected by a proceeding in *habeas corpus*.

 Complaint is also made that the indictment against petitioner fails to charge any offense known to the law. It is well settled that while the constitutionality of the law under which an indictment is found may be raised on *habeas corpus*, the failure of the indictment to sufficiently allege the offense, or to allege facts sufficient to constitute the offense charged, may not be questioned in such a proceeding. "The scope of inquiry upon *habeas corpus* into the sufficiency of an indictment or information is limited, for, although the petitioner may be discharged if the pleading totally fails to charge an offense known to the law, if there is attempted to be stated an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into." (13 Cal. Jur., p. 232.) The same principle is enunciated in the following cases: *In re Kavanaugh,* 180 Cal. 181, 182 [180 Pac. 533]; *In re Wilson,* 196 Cal. 515 [238 Pac. 359]. The indictment charged a violation of certain provisions of the Corporate Securities Act, which we have held to be valid and constitutional. It follows, therefore, that any defect in the indictment in attempting to set forth the offense charged, if there exist such defect, cannot, under the decisions of this court just cited be examined into or considered in this proceeding in *habeas corpus*.

 This disposes of all of the objections made by petitioner to the judgment of conviction based upon count three of the indictment charging a violation of the Corporate Securities Act. It thus appears that the petitioner is held in custody by virtue of a valid judgment of a court of competent jurisdiction. He is not, therefore, entitled to his discharge. (Pen. Code, sec. 1486; *In re Steiger,* 205 Cal. 408 [271 Pac. 201].) It becomes unnecessary for us, therefore, to pass upon the validity of the judgment rendered under count fourteen of the indictment charging petitioner with the crime of grand theft. Neither is it advisable for us to do so, as whatever determination we might make on that question would avail the petitioner nothing. Besides, it would be mere *dictum* and not binding either upon the petitioner, or the state officials, in any subsequent proceeding

which might be brought to test the validity of petitioner's imprisonment under said count fourteen. After the petitioner has satisfied the demands of the law for the violation of the Corporate Securities Act, it will then be proper, if he is so advised, to test the legality of his further imprisonment under the judgment based upon the charge of grand theft.

The writ is discharged and the petitioner is remanded.

Preston, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.