[L. A. No. 26574.   In Bank.   Mar. 15, 1962.]

DAVID JACOB SEITERLE, Petitioner, v. THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent.

398

Earl Klein for Petitioner.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow, Deputy Attorney General, William O. Mackey, District Attorney, and Roland Wilson, Chief Trial Attorney, for Respondent.

DOOLING, J.—The object of this proceeding is to prevent the respondent court from retrying the issue of penalty on two murder counts and so subjecting petitioner to "double prosecution and double punishment for the same act in violation of his constitutional rights forbidding double jeopardy." (U.S. Const., 5th Amend.; Cal. Const., art. I, § 13.)

Petitioner was indicted for the murders of Mr. and Mrs. Charles Duvel, and as to both counts he pleaded guilty to murder in the first degree. He also entered pleas of guilty to charges of several other crimes, including two counts of kidnaping for purposes of robbery with bodily harm and one count of conspiracy to commit murder in the first degree. Upon a trial on the sole issue of penalty, the jury fixed his punishment at death for each of the murders and at life im-

prisonment for each of the kidnaping offenses and for the conspiracy to commit murder. On appeal this court held that the trial court committed prejudicial error by instructing the jury that "a prisoner serving a life sentence might be paroled after seven years," since the alternate punishment from death provided for kidnaping for purposes of robbery with bodily harm is life imprisonment without possibility of parole (Pen. Code, § 209) ; and had the jury realized that petitioner "could not be paroled if sentenced to life imprisonment for the kidnapings, it might not have fixed his punishment at death for the first degree murders." (*People* v. *Seiterle,* 56 Cal.2d 320, 323-324 [14 Cal.Rptr. 681, 316 P.2d 913].) Accordingly, the judgment was "reversed insofar as it relate[d] to the issue of penalty for the offense of first degree murder" but "the portion of the judgment" unqualifiedly "imposing the sentences of life imprisonment for the offenses of kidnaping" was modified by adding the words "without possibility of parole" and "as so modified [was] affirmed." (56 Cal.2d at p. 324; July 24, 1961.)

Retrial of the penalty issue was set for November 6, 1961. Petitioner unsuccessfully argued that such further proceedings contravened the provision of section 654 of the Penal Code precluding multiple prosecutions, and his motion for dismissal of the murder counts was denied.

Petitioner has properly applied to this court for relief. ▇▇▇ Prohibition is an appropriate remedy to prevent further proceedings in violation of the "successive prosecution" prohibition of section 654, though the criminal acts are not "necessarily included offenses." (*Neal* v. *State of California,* 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839] ; see *Rodriguez* v. *Superior Court,* 27 Cal.2d 500, 501 [165 P.2d 1] ; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715].)

Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or *conviction and sentence* under either one bars a *prosecution* for the same act or omission under any other." (Emphasis added.)

It is petitioner's theory that because he has now been *convicted and sentenced* under the two counts charging him with kidnaping Mr. and Mrs. Duvel with bodily harm to them, section 654 bars the further *prosecution* of the two murder

charges involving the killing of Mr. and Mrs. Duvel as a part of the same transactions. It is only if, as petitioner claims, the record compels the conclusion that the murders of Mr. and Mrs. Duvel were the culmination of an "indivisible" transaction involving their kidnaping with bodily harm and terminating with their ultimate murders that the provisions of section 654 would properly be applicable. (*Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; *People* v. *Brown,* 49 Cal. 2d 577, 590-594 [320 P.2d 5].) ▮▮▮ As we stated in *Neal* at pages 19-20:

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.

"Thus in *People* v. *Logan,* 41 Cal.2d 279, 290 [260 P.2d 20], defendant, who chose to commit robbery by first knocking out his victim with a baseball bat and then taking his valuables was convicted of both robbery and assault. We reversed the assault conviction on the ground that the double punishment violated section 654. In *In re Chapman,* 43 Cal.2d 385, 387 [273 P.2d 817], however, we held that when the assault is not a means of perpetrating the robbery but is an act that follows after the robbery is completed the defendant is guilty of two punishable acts. Likewise in *People* v. *Greer,* 30 Cal.2d 589, 600 [184 P.2d 512], statutory rape and lewd and lascivious conduct were held to be one act since both offenses arose from a single act of sexual intercourse. In *People* v. *Slobodion,* 31 Cal.2d 555, 561-563 [191 P.2d 1], however, we sustained convictions for sex perversion and lewd and lascivious conduct, even though both acts were closely connected in time and a part of the same criminal venture since the act giving rise to the lewd and lascivious conduct was separate and distinct and was not incidental to or the means by which the act of sex perversion was accomplished."

▮▮▮ At the outset we notice that there was no trial on the issue of guilt of any of the offenses here involved because petitioner pleaded guilty to all of them. By pleading guilty to all of them without reserving, or attempting to reserve in any fashion, the question whether the kidnapings with bodily harm and the murders constituted indivisible transactions so as to prevent their double punishment under Penal Code section 654, petitioner, at least prima facie, admitted that the

crimes were separate and not indivisible. (See *Berg* v. *United States*, 176 F.2d 122; *Rice* v. *United States*, 30 F.2d 681; *Ex parte Thomas*, 55 F. Supp. 30; *Ex parte Hall*, 94 N.J.Eq. 108 [118 A. 347]; *People* ex rel. *Hetenji* v. *Johnston*, 10 App. Div.2d 121 [198 N.Y.S.2d 18]; *People* ex rel. *Hornbeck* v. *Jackson*, 7 App.Div.2d 689 [179 N.Y.S.2d 315], cert. den. 359 U.S. 972 [79 S.Ct. 886, 3 L.Ed.2d 838].)

▆ Evidence concerning the crimes was introduced by the prosecution and defense in the previous trial before a jury to determine the punishments to be imposed for the several crimes to which petitioner had pleaded guilty. That evidence was summarized in *People* v. *Seiterle, supra,* 56 Cal.2d at pages 321-322. As stated in that opinion at page 321: "The evidence is conflicting as to whether defendant said it would be necessary to kill the Duvels because they would recognize him." Petitioner's confederate Gentry testified that petitioner had so stated when they were planning the robbery and that he, Gentry, had expressed his disagreement. Petitioner not only denied making this statement but testified at length that at no time did he intend to kill either of them, and further testified that the killings were the sole acts of Gentry without petitioner's cooperation or consent. Gentry, who was admittedly the only one who stabbed the two victims, testified that the stabbing "was sort of an impulsive thing that happened all of a sudden"; and that once he started he couldn't stop. It is clear that the record does not compel the finding that the killings were part of a preconceived plan and hence, in the language of *Neal* v. *State of California* quoted *supra,* that "all of the offenses were incident to one objective." The record is equally consistent with the view that the kidnapings were completed before the murders, which followed as an afterthought.

▆ The only question remaining is the claim of petitioner that the murder of the victims is the very and only bodily harm inflicted upon them which rendered petitioner guilty of the offenses for which he has already been sentenced, i.e., kidnaping for the purpose of robbery *with infliction of bodily harm.* (See *People* v. *Carter,* 56 Cal.2d 549, 565 [15 Cal. Rptr. 645, 364 P.2d 477].) The victims were each tied by their hands and feet to the posts of a bed with their arms and legs extended in a spread-eagle fashion. Mr. Duvel was nude and Mrs. Duvel nude to the waist, and wearing only a knee-length pajama lower. They were left in this position for some considerable length of time while petitioner and

Gentry ransacked the house looking for money. The autopsy surgeon testified that he found in his examination of the body of Mr. Duvel "bruises of the right leg about the ankle, just above the ankle, and also above the ankle of the left leg" and that it was his conclusion that these were caused by "the constricting bands that had been tied around his ankles." There was also a gag consisting of a stocking and an overlapping 2-inch strip of sheeting material brought through his mouth and knotted in the back of his head. There was on the dead body a "creasing of the side of the face and neck from the material that had been tied around these parts." There had been a subsequent attempt to throttle Mr. Duvel but since this was a part of the attempt at his murder, it cannot be looked to as furnishing bodily harm antecedent to the murder. However, it appears that before any attempt to kill Mr. Duvel, he was tied spread-eagled on the bed so tightly as to leave bruises on both legs above the ankles from the constricting bonds and he was gagged so tightly as to cause a creasing on his face and neck from the material tightened across them. Having in mind particularly that Mr. Duvel was bound by his ankles for a considerable length of time while his assailants searched through the house, we cannot say that a kidnaping with the infliction of bodily harm upon him was not completed well in advance of, and separated both by time and intent from, his ultimate murder.

As to Mrs. Duvel there was no similar showing. The autopsy surgeon's testimony as to her body was limited to the effects of the attempt to throttle her and the stab wounds. But it does appear that she was bound to a bed in a position similar to her husband's and left in that position for a similar length of time before her assailants returned to the room and murdered her. In view of the fact that the evidence was introduced solely on the issue of punishment and without any thought of whether the crimes were separate or indivisible, and was obviously not directed to that question, we cannot, of course, know positively from the record before us whether her body bore any discernible injuries from being tied to the bed similar to those inflicted upon her husband. We cannot say that it clearly appears that it did not; and in view of petitioner's plea of guilty to the several charges and of the positive evidence of physical harm to her husband from being tied in a similar fashion, and the likelihood that similar harm might result from similar treatment, we conclude that the prima facie showing that the crimes against her person were

separate, which followed from the pleas of guilty to both charges, has not been overcome by the record before us.

The alternative writ is discharged and the petition for writ of prohibition is denied.

Gibson, C. J., Traynor, J., Peters, J., and White, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I concur in the judgment and in all of the reasoning upon which it is essentially based but must dissent from that portion of the opinion which states (*ante*, p. 400) quoting from *Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [22] [9 Cal.Rptr. 607, 357 P.2d 839]) : ''Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'' (Italics added.)

The quoted statement, if taken at its face value, appears to mean that a smart criminal—and some of them are smart and learn fast—could always include in his ''intent and objective'' the commission of every crime within his imagination which conceivably might conduce to the attainment and enjoyment of his ultimate objective. For example, if his ultimate objective was to steal and enjoy (in freedom for most of his natural life) the use of a proposed victim's wealth he could plan his ''intent and objective'' to include extortion, forgery, kidnaping, robbery, theft of an automobile, and murder of the victim. With all of these crimes included in his ''intent and objective,'' a temporary concealment of most of the crimes coupled with a professed guilty conscience and surrender to police, followed by a plea of guilty to the sole crime of stealing the automobile would, according to the ''intent and objective'' theory, secure him immunity for all time from subsequent prosecution on the other crimes. According to the *Neal* quotation, ''If all of the offenses were incident to *one objective,* the defendant may be punished for any one of such offenses but not for more than one.'' (Italics added.)

The true rule in California has been, and should continue to be, that which is enunciated and applied in *In re Chapman* (1954) 43 Cal.2d 385, 388-390 [2-8] [273 P.2d 817], particularly as summarized at pages 389-390: '' [6] The applicability of section 654 depends upon whether a separate and distinct

act can be established as the basis of each conviction. [Citation.] Multiple convictions have been affirmed in cases in which separate and divisible acts have been proved as the basis of each conviction *even though those acts* were closely connected in time and *were part of the same criminal venture.* [Citations.] [7] It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished. [Citations.]'' (Italics added.) Each of the crimes of the defendant in the hypothetical case would require a separate act; hence, under the *Chapman* rule, each could be charged and separately punished; the defendant would gain no immunity from punishment for his other crimes by confessing and suffering punishment for stealing the automobile. Even though the extortion, forgery, kidnaping, robbery and the murder, might not be discovered for years the guilty defendant would still be liable to trial and punishment for each of them because each of them was a separate crime done by a separate act, notwithstanding all ''were incident to one objective.'' (See also *People* v. *Brown* (1958) 49 Cal.2d 577, 590-593 [13] [320 P.2d 5].) The *Chapman-Brown* rule is not only better law; it is better penology.

It is appropriate also to point out that denial of prohibition in the case at bench is required by at least three separate and independent grounds in addition to the one relied on by the majority.

First: ''The doctrine of double jeopardy [if on any theory that doctrine might otherwise be urged as applicable here] has no application to a defendant who is tried but once on several counts.'' (*People* v. *Chessman* (1951) 38 Cal.2d 166, 193 [33-35] [238 P.2d 1001]. The defendant-petitioner here has been tried but once on several counts. All of the counts together are embodied in and constitute but a single prosecution. That prosecution is not complete until disposition has been made of each count. The prosecution on the murder counts will not be complete until the penalty as to each of those counts has been lawfully determined, sentence thereon pronounced, and execution of the sentence commenced. Execution of sentence imposing the penalty, whether it be death or imprisonment in a felony case, commences when the defendant is delivered into the control of the officer charged with executing the sentence. (*People* v. *McAllister* (1940) 15 Cal.2d 519, 526 [2] [102 P.2d 1072]; *accord: People* v. *Thomas* (1959) 52 Cal.2d 521, 529-531 [5-8] [342 P.2d 889].)

With respect to jeopardy this court declared in *In re Wilson* (1925) 196 Cal. 515, 524 [5] [238 P. 359] : "[T]he constitutional guarantee [as to double jeopardy] has no application to the service of a sentence, but applies only to twice being put upon trial for the same offense." Manifestly the proceeding to determine and to pronounce sentences for the convictions obtained (whether by pleas of guilty or otherwise) in the only trial as to the issue of guilt does not constitute putting the defendant again "upon trial for the same offense." To hold otherwise would mean that the procedure established by Penal Code sections 190 and 190.1 could never result in imposition of sentence because every defendant in a capital case would have been in jeopardy before the proceeding to fix and impose the penalty could commence. The concept of jeopardy having once attached as constituting a bar to conviction of a particular offense in a *subsequent* prosecution has no proper application to the completion of the original prosecution; i.e., as applicable here, to the fixing of penalty on a final judgment of conviction in the very prosecution in which the jeopardy is claimed to have attached. If the defendant could not be sentenced to any penalty on the murder counts then the jeopardy which precludes the sentence would have obliterated the entire prosecution on those counts! Manifestly neither the doctrine of former jeopardy nor the proscription of double punishment by Penal Code section 654 has any proper application to the procedure prescribed by Penal Code sections 190 and 190.1 for fixing the penalty after conviction of murder of the first degree.

Second: As to the proscription of multiple punishments for one act as laid down in Penal Code section 654 our decisions have consistently recognized the *physical* law, and obediently held, that there can be no such thing as multiple punishments for one act where one of the punishments is death. "Penal Code, section 654, specifically proscribes double punishments rather than double convictions. A single act constituting an essential element of two separately charged crimes may result in initial conviction of both crimes but only one—the more serious offense—will be punished. [Citations.] Where the more serious offense carries the death penalty no useful purpose would be served by reversal of the conviction for the less serious offense." (*People* v. *Chessman* (1959) 52 Cal.2d 467, 495-496 [19] [341 P.2d 679], cert. denied, 361 U.S. 925 [80 S.Ct. 296, 4 L.Ed.2d 241] ; see also *People* v. *Carter* (1961)

56 Cal.2d 549, 565 [11] [15 Cal.Rptr. 645, 364 P.2d 477];
*People* v. *Wein* (1958) 50 Cal.2d 383, 409-410 [42] [326 P.2d
457]; *People* v. *Brown* (1958), *supra*, 49 Cal.2d 577, 590-593
[13]; *People* v. *Smith* (1950) 36 Cal.2d 444, 448 [4b] [224
P.2d 719]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 186-189
[13a, 14] [217 P.2d 1].)

On this phase of the matter it is further pointed out that
if upon retrial of the penalty issue for the two first degree
murder counts the punishment is fixed at death, such punish-
ment would be greater than the life imprisonment sentences
for the kidnaping offenses, and it would be the latter sentences
that would fall. Moreover, as pointed out by the Attorney
General, under the provisions of section 669 of the Penal Code
if sentences of life imprisonment should be imposed as to the
two murder counts they would as a matter of statutory law
merge with the sentences of life imprisonment without possi-
bility of parole as to the kidnaping offenses, thus obviating
the possibility of double punishment in such event.

Third: It is, and at least since 1869 has been, the law of
this state that a defendant cannot on appeal secure the rever-
sal (or by habeas corpus, the vacation) of a judgment and
thereafter successfully interpose the special plea of former
jeopardy or former conviction as a defense on retrial. (See
e.g., *People* v. *Webb* (1869) 38 Cal. 467, 480; *People* v. *Tong*
(1909) 155 Cal. 579, 583 [102 P. 263, 132 Am.St.Rep. 110, 24
L.R.A. N.S. 481] ["It is now the generally accepted American
doctrine that 'whenever a verdict . . . has been rendered . . .
and the defendant for any cause moves in arrest of judgment,
or applies to the court to vacate a judgment already entered,
. . . he will be presumed to waive any objection to being put
a second time in jeopardy; and so he may ordinarily be tried
anew' "]; *People* v. *Stratton* (1934) 136 Cal.App. 201, 207
[4], 208 [8] [28 P.2d 695]; *People* v. *Green* (1956) 47 Cal.2d
209, 235 [302 P.2d 307] [" [14] Inasmuch as the original
sentence is set aside at the behest of the defendant it cannot
be successfully pleaded as constituting former jeopardy"];
*People* v. *Mills* (1957) 148 Cal.App.2d 392, 394 [1] [306 P.2d
1005].)

For each and all of the reasons hereinabove stated I concur
in the judgment discharging the alternative writ and denying
the petition for writ of prohibition.

McComb, J., concurred.