[Crim. No. 4773.   Second Dist., Div. One.   July 21, 1952.]

THE PEOPLE, Respondent, v. DOYLE DAVID BARBER, Appellant.

334

George D. Sphier for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County defendant was accused of the crime of burglary, in that he entered the home of Donald Calundan at Walnut Park, in the county of Los Angeles, with the intent to commit theft. Following the entry of his plea of not guilty a jury found defendant guilty of burglary and found the offense to be burglary of the second degree. Defendant's motion for a new trial was denied. From the judgment of conviction and from the order denying his motion for a new trial, he prosecutes this appeal.

Concerning the factual background surrounding this prosecution the record reveals that on November 15, 1950, Donald L. Calundan moved into a house at Walnut Park. In the living room thereof he installed a television set which he had purchased during the preceding August for $175. It was a Zenith table model with a 12½ to 14-inch screen and weighed approximately 100 pounds.

During the latter part of November, 1950, Mr. Calundan hired a woman named Artilla Fox to help the former's wife wash the walls of the house. Artilla Fox worked there for two days and the defendant, who at that time was not working elsewhere, accompanied her and helped her in the wash-

ing of the walls. He was there for about a day and a half. The television set was in the living room of the Calundan house at the time Artilla Fox and defendant were working there.

On the morning of December 2, 1950, Mr. Calundan locked up his house and left about 10:30 o'clock. Nobody remained on the inside of the house after he had locked it and departed, leaving his television set in the living room. He returned home that evening about 5 o'clock. He then discovered a hole in the rear screen door, measuring an inch or inch and a half across. The hook of the screen door had been lifted up and the door had been entered. The television set was missing. Mr. Calundan reported the matter to the police immediately.

About December 15, 1950, defendant gave the television set which had been taken from the Calundan house to the former's son-in-law.

The first time Mr. Calundan saw Artilla Fox after she had worked at his house was four or five weeks thereafter, when he visited her in Banning, California, where she was living in a motor court cabin with defendant. She mentioned the television set first, saying, "I understand that your set is missing." Mr. Calundan said that it was and the defendant thereupon said, "Yes, I know."

Previous to the aforesaid Banning trip, Artilla Fox had telephoned to Mr. Calundan and talked with him about the loss of his television set.

On May 21, 1951, Artilla Fox telephoned to Mrs. Calundan and on that same evening she met Mr. Calundan and told him that if he wanted his television set he could go to a certain address and find it. Later that evening, Mr. Calundan, accompanied by two officers, went to the home of defendant's son-in-law and recovered the television set.

After the defendant was taken into custody Deputy Sheriff O'Neil, one of the arresting officers, had a conversation with him on May 26, 1951. The officer asked him if he knew why he had been arrested and the defendant said he thought it had something to do with a television set. The officer asked defendant how he got the set and he said that on the Saturday before Christmas he arrived in Los Angeles from his job as a truck driver; that he went to get his car on a parking lot where it was parked with one of the brakes stuck; he opened the turtleback to get tools and saw a television set there. He went to Artilla Fox and asked her where

she got the set, and she said, ''What do you care? It's there, isn't it? Come in and have a drink.'' They had some drinks together and defendant then, without asking Artilla Fox if he could do so, took the television set and left it at his son-in-law's house. He said that ''he was sure in his own mind that something was wrong with the television, but that he didn't want to start an argument with Artie about it.''

Defendant stated that about a month after he had given the television set to his son-in-law, Mr. Calundan drove up to the cabin in Banning where he was living with Artilla Fox; that they discussed a television set with Mr. Calundan and defendant said he then came to the conclusion that possibly the stolen television set was the one he had given to his son-in-law. He told the officer that he then intended to take the television set from his daughter and son-in-law and move it to his cabin in Banning because he did not want to get them into trouble. He stated he priced television sets in stores with the intention of buying one for his daughter and son-in-law, but did not do so.

As a witness in his own behalf defendant testified that he met Artilla Fox in 1942, and started to live with her in 1949. That he was a truck driver and during November, 1950, was employed by the Lang Corporation driving a truck between Los Angeles and Las Vegas, Nevada, and that the round trip took about 30 hours. That in the latter part of November, 1950, he went to Mr. Calundan's house with Artilla Fox and assisted her in washing the walls. That they worked from 8 a. m. to about 3 p. m. That while he was there he noticed a television set in the home. That he did not return to the Calundan house on the next day but around Thanksgiving time he went there to pick avocados. That he did not return to the Calundan home thereafter. That his next job was driving a truck between Los Angeles and Banning, California. That he started on the new job about the middle of December. He then recounted that he owned a Buick and that he was living sometimes with his daughter and sometimes with Artilla Fox. That when he was away Artilla Fox had the use of his automobile. A couple of weeks before Christmas he arrived from Las Vegas about 7 in the morning and parked his truck at Third and Alameda Street. That he then telephoned Artilla Fox to come and get him in his car. That she did not do so and he then went to the café where she worked. He then de-

tailed his conversations and actions in much the same fashion as he had related them to Deputy Sheriff O'Neil, as hereinbefore narrated.

Defendant then testified that in December he moved to Banning, California, and that Artilla Fox followed him driving in his automobile. He then detailed the visit of Mr. Calundan as heretofore set forth. Defendant testified that at the time of the visit just referred to "the thought occurred to" him that the television set he had given to his son-in-law might be the set Mr. Calundan had lost. Defendant further testified that he remained in Banning until May 15, 1951, when, after an argument with Artilla Fox, he left for Los Angeles, leaving her in Banning. That she subsequently came to Los Angeles and he had another argument with her, after which she left him and that he had never seen her thereafter. Defendant denied that he had taken the television set from the Calundan home.

It is conceded that both the prosecution and defendant's counsel made efforts to locate Artilla Fox but to no avail.

The sole contention advanced on this appeal is that the evidence is insufficient to support the judgment of conviction, in that it shows no more than possession by the accused of property stolen in the burglary which, contends appellant, is not sufficient to show his participation therein.

In approaching a consideration of the question as to whether there is sufficient evidence to support a guilty verdict, we are not authorized to retry the cause. That is the function of the trial court. We cannot determine the weight of the evidence nor the credibility of the witnesses. We can decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the triers of fact to warrant the inference of guilt. And, we must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence. From such facts we must determine whether they are sufficient to support the verdict. When an appellate tribunal has concluded that sufficient facts reasonably justify the verdict of the jury, we are without warrant to interfere because in our opinion the circumstances might also reasonably be reconciled with the innocence of the accused (*People* v. *Latham*, 43 Cal.App.2d 35, 38 [110 P.2d 101]; *People* v. *Hennessey*, 201 Cal. 568, 571 [258 P. 49]; *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]).

Common knowledge teaches that burglary is practically

always committed in the absence of the occupants of the burglarized premises or while they sleep. Manifestly, in cases such as the one now before us, the guilt of the perpetrator must be proved by circumstances. That the corpus delicti in the case at bar was proven is conceded. The sole remaining question therefore is, whether the facts and circumstances shown in evidence reasonably justified the deduction by the jury that appellant was the perpetrator of the proven crime.

There was evidence that appellant worked at the Calundan home with his friend Artilla Fox shortly before the burglary, and to that extent, was familiar with the premises, and by his own admission, he was aware of the presence of the television set in the Calundan home.

The burglary occurred on December 2, 1950, and within some two weeks thereafter appellant was shown to have been in possession of the stolen property.

■ While the mere possession of stolen property unexplained by an accused is not of itself, and standing alone, sufficient to justify a conviction of burglary, yet such possession of stolen property is a circumstance which, taken in connection with other incriminating evidence in the case, may be considered by the court or jury in determining the question of guilt or innocence of a defendant so charged.

And, by "unexplained," as used in the rule just mentioned, is meant the absence of an explanation sufficient to raise a reasonable doubt (*People* v. *Miller,* 54 Cal.App.2d 384, 386 [128 P.2d 785]). In other words, an improbable explanation stands on the same footing with no explanation. ■ In the case now engaging our attention, when asked where he obtained the stolen property, appellant said that he found it in his automobile when he returned from a trucking job, and that his friend Artilla Fox had used his automobile while he was gone. He maintained that she refused to tell him where she got the television set and admitted that he thought there was something wrong about the matter, but that he had given it to his son-in-law without asking Artilla Fox whether or not he might do so. He also said that when he learned about a month after the burglary that Mr. Calundan's television set had been stolen, he came to the conclusion that the set in question was the one he had given to his son-in-law, and that while he intended to take that set to his own cabin in Banning and get his son-in-law a new one, he never did so.

We are satisfied that the jury was warranted in concluding that the foregoing explanation was, in fact, no explanation, thereby leaving appellant's possession of the stolen property as aforesaid, a strong circumstance pointing to his guilt as the perpetrator of the burglary.

There is also substantial evidence of the consciousness of guilt on the part of appellant in his statement to Deputy Sheriff O'Neil wherein he said, "that he was sure in his own mind that something was wrong with the television but that he did not wish to start an argument with Artilla." And again, on the occasion at Banning, California, during the last week in December, 1950, when the owner of the stolen property and his family visited appellant and Artilla Fox in the latter's home, on which occasion, according to appellant's own testimony given at the trial, "the thought occurred to him" that this television set that he had given to his son-in-law and daughter might be the set that came out of Mr. Calundan's home. This course of conduct lends support to the action of the jury in rejecting appellant's proffered explanation of the manner in which he came into possession of the stolen property in question.

From the foregoing it appears, therefore, that the evidence was sufficient as a matter of law to sustain the conviction.

The judgment and the order denying a new trial are, and each is affirmed.

Doran, J., and Drapeau, J., concurred.