[Crim. No. 2982.    Third Dist.    Dec. 18, 1959.]

THE PEOPLE, Respondent, v. EDWARD O'NEAL, Appellant.

E. R. Williams, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

PEEK, J.—The defendant appeals from a judgment following a verdict of the jury finding him guilty of possession and sale of marijuana in violation of section 11500 of the Health and Safety Code. He admitted and was found guilty of a prior felony conviction under the same section.

At approximately midnight of October 25, 1958, four members of the Stockton police force, accompanied by an informant, one Leslie Chambers, went to the vicinity of a dwelling at 242 West Market Street in the city of Stockton. No one lived on the first floor. One of the four rooms on the second floor was occupied by defendant and his common-law wife, Mary Ann O'Neal. The other rooms were occupied by Mr. and Mrs. Mosely and Mrs. Simms. The second floor also contained a community kitchen used by all of the tenants. At the rear of the building were stairs leading down to the backyard which was not accessible to the public generally.

The officers, after searching the informant Chambers and finding no narcotics, gave him a marked one dollar bill, the serial number of which had been recorded. The officers then stationed themselves a short distance from the house. When Chambers knocked at the front door of the dwelling, someone appeared at an upstairs window visible to the policemen and carried on a conversation with him. During the conversation one William Brown walked up to the house. He and Chambers then entered using a key belonging to Mary Ann which Brown had in his possession. Within four or five minutes Chambers left the house, walked past the police and dropped a cigarette at their feet. After speaking briefly to them he walked away. The officers then attempted to enter the house, but finding it locked waited at the entrance. Looking through a crack they saw Brown and the defendant descending the stairs. When the door was opened the police rushed in. The defendant

attempted to run back up the stairs but was apprehended and arrested, as were Mary Ann and Brown.

The three were then taken upstairs to the room from which the unknown person had spoken with Chambers. This room was occupied by defendant and Mary Ann. Defendant was asked to undress and his shirt and trousers were taken by the police. The knees of the trousers appeared dusty. The debris in one shirt pocket and in all of the pants pockets was subsequently found to contain microscopic particles of marijuana. Several bills totaling $17 were found in defendant's shirt pocket. The marked one dollar bill previously given to Chambers by the officers was folded and on top of the other bills. An officer shone a light in the defendant's eyes and observed that the pupils were abnormally dilated, indicating he was under the influence of narcotics.

In searching the room the officers found in a dresser drawer the wax filler to a tobacco can. The tobacco remained undisturbed in the filler. Also in a dresser drawer they found brown papers used in rolling cigarettes. Underneath the ironing board in the community kitchen the police discovered a tobacco can almost full of marijuana. Pursuant to information that defendant had gone down the back stairs while the informant was in the room, the officers then searched a small room-like area under the stairs which was quite dusty and could only be reached by crawling. There they found two packets, one containing 38 marijuana cigarettes all rolled in brown paper and a bag containing loose marijuana, and one containing 23 marijuana cigarettes. In a cubbyhole they found a second can containing loose marijuana. All of the cigarettes were rolled in the same type of brown paper. A hypodermic needle and spoon were also found under the stairs. On a ledge over the door on the back porch was found a packet of marijuana seeds. Altogether 876 grains of marijuana were found on the premises, all of which was admitted into evidence. In addition to the defendant and Mary Ann, there were two adults and a child on the premises on the night of the arrest and search, all of whom were asleep.

When first arrested defendant stated that he had received nothing from Chambers. Later when shown the one dollar bill given to Chambers by the officers, he asserted that Chambers had owed him some money. At the time of trial defendant stated that Chambers had given Mary Ann two dollars in payment of a debt to him, and that she had later given him the money. At another time he stated that Chambers had left

a coat with him as security for the debt but after paying off the debt to Mary Ann, he decided to pick up the coat at a later time. Defendant denied all knowledge of the marijuana found in and about the house but had no explanation for the minute particles they had found in his clothing. He testified that the clothing had been returned from the cleaner that day. He attributed the dust on his trousers to the fact that when arrested he had been knocked to his knees. He also stated that in all probability he had thrown out the tobacco can filler which was found in his room; that he did not roll his own cigarettes, and that he could neither explain the reason for, nor could he recall ever seeing, the brown papers in the room. Contrary to his earlier statement to the police, he said that he did not go out of the building the back way during that evening. He also testified that no officer had checked his eyes with a flashlight at the time of his arrest.

Brown, who testified for the defendant, stated he had accompanied Chambers to defendant's room and had been there all of the time except for a short period when he was in the bathroom down the hall; and that while he was in the room he saw neither money nor marijuana change hands.

Following defendant's arraignment he told Officer Roop that he would like to talk to him " '. . . regarding cleaning up this town because . . . [he] knew plenty.' " He further told Roop, " '. . . I want to talk to you regarding this stuff that's going on down there.' " He stated he was not the big one; that there was someone bigger.

The informant Chambers was subpoenaed by the prosecution and presumably was present when called at the end of the first day of the trial, but before he could take the stand court was adjourned for the day. He did not appear on the following day nor did he thereafter testify. The prosecutor did not act upon the court's suggestion to hold Chambers in contempt but merely asked leave to put him on the stand if he appeared during the defendant's case.

Defendant first contends that the evidence was insufficient to support the conviction of sale. His argument in this regard is that since it affirmatively appears that the informant Chambers contacted Brown before entering defendant's premises, and since Mary Ann was admittedly in the apartment at the time of the sale, there is what was referred to in *People v. Lawrence,* 168 Cal.App.2d 510 [336 P.2d 189], as a ". . . total gap in the chain of evidence." (P. 513.) While direct testimony by the informant that he purchased the cigarette

in question from defendant would have left no doubt on the question of sale, we cannot agree with defendant that the failure of Chambers to testify creates such a gap in the evidence as compels a reversal. It appears to this court that as the question raised is essentially one of fact, necessarily therefore each case must be decided on the particular facts presented therein.

At the outset the defendant is confronted with the well-established rule that this court must assume in favor of the verdict the existence of every fact which the jury could reasonably have inferred from the evidence, and this is true even though such evidence may be circumstantial. (*People v. Newland,* 15 Cal.2d 678 [104 P.2d 778].) On the record previously summarized, the jury could have found that the informant Chambers had no narcotics on his person when he entered the defendant's apartment; that Chambers had a marijuana cigarette on his person when he left the apartment, and that he had purchased the cigarette from defendant while he was in defendant's room. The evidence from which such conclusions could have been drawn was the finding of the marked money on defendant's person; the finding in the room of brown cigarette papers which were similar to those found on the other cigarettes on the premises; the fact that defendant did not roll his own cigarettes and only smoked those which were "tailor made;" the finding in the room of a tobacco filler with the tobacco undisturbed; the finding of tobacco cans filled with marijuana and cigarettes; the dust on the knees of defendant's trousers which could have been occasioned by his being in the dusty area under the stairway where the police found some of the cigarettes; the fact that he had gone down the back stairs during the time the informant was in the room; the evidence of marijuana debris found on his person showing him to be one who had been handling marijuana; the dilated pupils of his eyes indicating he was then under the influence of narcotics and hence a user; the fact that other tenants of the building were asleep at the time of the arrest and their testimony denying any knowledge of the marijuana; the contradictory statements made by defendant at the time of his arrest concerning his possession of the marked dollar bill; his attempted escape when first apprehended; his incriminating statements made to a police officer after his preliminary examination; and his prior conviction for the same charge which impeached his entire testimony. These were all facts and circumstances from which the jury could reasonably infer and therefore conclude that

defendant was the one who sold the cigarette in question to the informant Chambers.

We also conclude that all of the evidence above set forth is equally applicable to the charge of possession and is amply sufficient to support the conclusion of the jury on this count.

■ Defendant's final contention is that the court erred in admitting into evidence the marijuana and other articles found on the premises but outside of defendant's room. We cannot agree with this contention. The record discloses evidence, not strong but nevertheless sufficient to connect defendant with the marijuana. When the informant Chambers left the premises he had a marijuana cigarette which we have heretofore held was sufficient to warrant the conclusion of the jury that it was sold to him by the defendant. This cigarette was identical to those found under the ironing board and under the back stairway. At the time of his arrest the defendant appeared to be in a state of narcosis, but no narcotics were found in his room. It is a reasonable inference that the narcotics which he obviously was using and the cigarette which he sold to Chambers came from some place on the premises, and though outside defendant's room, were obviously accessible to him. Furthermore, defendant's statement to Officer Roop implied that he was involved in the narcotics traffic, and certainly one so involved would have to have a readily available supply. Under the circumstances shown by the record the defendant could not have left the premises to obtain the marijuana, and lastly, the hiding places where the disputed evidence was uncovered were under his partial control.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1960. Schauer, J., McComb, J., and Peters, J., were of the opinion that the petition should be granted.