[Crim. No. 4380.    Third Dist.    Aug. 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ARTHUR JOHN FLEIG, JR., Defendant and Appellant.

Paul Petrozzi, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Michael C. Gessford, Deputy Attorneys General, for Plaintiff and Respondent.

REGAN, J.—Defendant was tried before a jury and found guilty of a violation of section 245 of the Penal Code (assault with a deadly weapon—count 1), and a violation of section 459 of the Penal Code (burglary in the nighttime while armed with a deadly weapon—count 2), and a second and separate violation of section 459 (burglary in the nighttime—count 3). He appeals from the judgment and sentence.

## COUNTS 1 AND 2

Mrs. Mary Holloway and her children were occupants of a room at the Sacramento Inn, a motel in Sacramento County. Between 4:30 a.m. and 5 a.m. on July 14, 1966, Mrs. Holloway awakened to find a male figure standing between the beds with a knife in his hand. She tossed up her blankets and stood up. There was a brief scuffle and the man fled out the front door, leaving a fingerprint later found to be defendant's. Mrs. Holloway received a penetrating chest wound, requiring hospitalization, and was also cut on the hand. Subsequently it was discovered that her purse was missing, along with articles of clothing belonging to Mrs. Holloway and her daughter. These included brassieres, a half-slip, nylon stockings, and bathing suits. The articles of clothing and purse had been left in various places in the room before the family retired. Mrs. Holloway testified she was not conscious that the intruder tried to attack her with the knife.

## COUNT 3

At 9 a.m. on the same day as the Holloway burglary, Mrs. Donna Silva arose at the home of her parents-in-law and dis-

covered her purse and brassiere missing. She had left her brassiere and purse (in which was her marriage license) by her couch-bed when she retired.

## DEFENDANT'S ARREST

On the following day, Officer Hansen of the Sacramento police found the Holloway and Silva purses together under shrubbery on a golf course. Items belonging to the Holloway family (e.g., the half-slip) were in Mrs. Silva's purse; and some of Mrs. Silva's property (e.g., her marriage certificate) was in Mrs. Holloway's purse. Nearby the officer found a citation which had been issued to Mrs. Silva's husband. At the same time the officer saw defendant lying down some 25 yards from the point where the purses were found. There were golfers on the course but no person other than defendant near the purses.

After returning to his patrol car to radio for a picture-taking unit, Officer Hansen went back to the discovery scene and talked with defendant, who was still lying against the tree. In his hand defendant had a jar of peanut butter. In the jar was a knife.

Officer Hansen asked defendant "for identification" and inquired "what he was doing in the general area." (The trial record does not reflect defendant's response.) Then the police officer asked defendant to remain in the area, telling him he would be right back. Officer Hansen then returned to his patrol car a second time and made a radio call to determine if there were any outstanding warrants for defendant's arrest.

About five or ten minutes after Officer Hansen had gone back to his car a second time. defendant came up to that vehicle. The knife was not in defendant's hand at that time. Officer Hansen "did not know the knife was missing then." At the car, he told defendant he "thought it was an illegal knife" (meaning the blade was too long). Approximately five or ten minutes after defendant had approached the police car, a radio call informed Officer Hansen there was a traffic warrant outstanding for defendant. For that reason, the officer then took defendant into custody.

Two days later a knife was found by Detective Clark on the golf course near where defendant had been first observed. At the trial Mrs. Holloway, when shown the knife, described it as being "very similar" to the one held by the male intruder at the motel. The arresting officer testified the knife was "very similar" to the one which defendant had in the peanut butter jar at the golf course. Miss Linda Lee, who had been awak-

ened in her Sacramento apartment at 5:45 a.m. on the day of the Holloway and Silva crimes by a naked male who was pointing a knife at her throat, positively identified defendant as her intruder and the knife as the same one defendant had shown her after holding it at her throat.

## Points On Appeal

■ Defendant contends prejudicial error was committed in not excluding the knife from evidence. He claims ''it flows from an inadmissible confession.'' In his brief he asserts that he ''did lead Detective Clark to the place where he [defendant] had dropped the knife . . . near the Haggin Oaks Golf Course'' and contends that this act of leading was a ''verbal act,'' part of an inadmissible confession made by defendant, and that, by analogy to search and seizure cases, the knife should have been excluded as ''fruit of the poisoned tree.''

The record is devoid of any evidence that defendant led Detective Clark to the knife, nor when questioned on *voir dire* did Detective Clark mention either the knife or any visit to the golf course with defendant. The record fails to show the finding of the knife to be the result either of any inadmissible statement of defendant[1] (*People v. Buchanan,* 63 Cal.2d 880, 887 [48 Cal.Rptr. 733, 409 P.2d 957]; *People v. Nelson,* 233 Cal.App.2d 440, 443 [43 Cal.Rptr. 626]) or of any inadmissible communicative act of defendant (*Schmerber* v. *California,* 384 U.S. 757, 761 [16 L.Ed.2d 908, 914, 86 S.Ct. 1826] fn. 5). Further, defendant's counsel expressly told the trial court he had no objection when the knife was ultimately offered and received into evidence. We find no error here.

■ We examine now defendant's contention that there was insufficient evidence to support his conviction under count 3—the alleged first degree burglary of the Silva home.

On this appeal the evidence and the inferences which the jury could reasonably deduce therefrom must be viewed in the light most favorable to respondent. (*People* v. *O'Neal,* 176 Cal.App.2d 402, 406 [1 Cal.Rptr. 390].) Likewise, it was for the jury alone—and not this court—to be convinced of defendant's guilt beyond a reasonable doubt and to decide what construction should be placed upon evidence compatible as well with innocence as with guilt. (*People* v. *Hillery,* 62 Cal. 2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].)

■ Mrs. Silva had retired between 12:30 a.m. and 1 a.m.

---

[1] The trial judge excluded evidence of oral statements obtained from defendant as a result of Detective Clark's interrogation.

on July 14th. Her parents-in-law were talking in the same
room at and after 6:30 a.m. that date. Consequently, the Silva
home was burglarized sometime during a period of at least
five and one-half hours between 1 a.m. and 6:30 a.m. This
evidence was adequate to establish that the burglary of the
Silva home was "committed in the nighttime," i.e., was first
degree burglary, especially when considered in conjunction
with the testimony that on July 14th "it was dark" outside
at 5 a.m., that "it was just light" at 5:45 a.m. "before the
sun came up," and that it was "between light and dark" at
6:30 a.m. (See Pen. Code, §§ 460, subd. 1, 463; *People* v.
*McCarty,* 117 Cal. 65 [48 P. 984]; *People* v. *Jordan,* 204
Cal.App.2d 782. 790 [22 Cal.Rptr. 731]; *People* v. *Ross,* 61
Cal.App. 61 [214 P. 267]; *People* v. *Mendoza,* 17 Cal.App. 157
[118 P. 964].)

Mrs. Holloway had gone to sleep in her motel room
with her two children at 1 a.m. on July 14th and defendant
was shown to have been there later that night for an unknown
length of time terminating between 4:30 a.m. and 5 a.m.
There was also evidence from which the jury could infer that
defendant had at least attempted to break into five other
rooms at the same motel during some unestablished interval.
Even if the jurors had also inferred those five attempted en-
tries were all made after 1 a.m. that night, they were justified
in concluding from the nature of the offenses that—both in
attempting entry to the other rooms and in burglarizing the
Holloway room—defendant had exposed himself to apprehen-
sion at the Sacramento Inn only a small portion of the four
hours between 1 a.m. and 5 a.m. Apart from Miss Lee's testi-
mony establishing that between 45 minutes and one and one-
quarter hours were available to defendant from the time he
fled the Holloway room until he entered the Lee apartment,
the jury could reasonably infer that defendant had ample
time between 1 a.m. and 5 a.m. to accomplish the Silva bur-
glary before shifting his activities to the inn.

There was, however, no evidence of any similarity
in the methods used to enter the Holloway motel room, the
Lee apartment, and the Silva residence. The screen door to the
Holloway patio had "a cut approximately three inches long
just opposite the lock of the screen door. The bottom of the
cut appeared to be in a tear-drop design or a small hole."
There were "no pry marks" on the sliding glass door to the
Holloway patio; police tests demonstrated it could be opened,
though locked, by lifting up on the handle and vibrating the

door. In contrast, to gain access to the Lee apartment, defendant "had taken the screen off and pried open the window." The record contains no hint of the technique used to accomplish this, nor was there any evidence concerning marks which might have been left on the Lee screen and window. Finally, as to the Silva home, "the screens were gone" on two windows. The missing screens were later found outside; they had not been cut in any way. There was no evidence concerning the method used to remove them, except for whatever speculative interpretation can be given to Mrs. Silva's testimony that "the wall" was "chipped . . . on the side of the screen on the outside."

The mere fact that the Silva and Lee screens were *removed* was not sufficient to establish a *modus operandi*. When respondent refers to "the common means of entry used . . . in entering Miss Lee's apartment and the Silva residence," respondent can be referring to nothing more "inculpatory" than the fact that, in each burglary, one or more screens (of unknown similarity) were taken off and access was made through a window.

■ Nevertheless, defendant's guilt of the Silva burglary was established in other ways. First of all, there was circumstantial evidence of his having been in possession of Mrs. Silva's brassiere and purse on at least the day after the Silva offense. This circumstantial evidence consisted of the following: (1) defendant had taken a purse and female clothing—brassieres, a half-slip, bathing suits, and nylon stockings—from Mrs. Holloway's motel room on July 14th; (2) Mrs. Silva's brassiere and purse were found with Mrs. Holloway's purse and most of the Holloway clothing on July 15th in the shrubbery near where defendant was first seen that day at the golf course; and (3) items belonging both to the Holloway family and to Mrs. Silva were intermixed in the two purses. (See *People* v. *Citrino*, 46 Cal.2d 284, 288 [294 P.2d 32]; *People* v. *Holley*, 194 Cal.App.2d 538, 540 [15 Cal.Rptr. 44]; *People* v. *Alba*, 52 Cal.App. 603 [199 P. 894].)

Defendant's possession of Mrs. Silva's brassiere and purse was an inculpatory circumstance which the jury could consider on the issue of guilt—though insufficient in and of itself to support a conviction under count 3. Defendant himself offered no evidence.

"While the mere possession of stolen property unexplained by the defendant is not of itself, and standing alone, sufficient to justify a conviction of burglary, even if it be shown to a

moral certainty and beyond a reasonable doubt that by some-
one the alleged burglary was committed, yet such possession
of stolen property is a circumstance which, *taken in connec-
tion with other incriminating evidence in the case,* may be
considered by the court or jury in determining the question of
the guilt or innocence of a defendant so charged.'' (Italics
added.) (*People* v. *Golembiewski,* 25 Cal.App.2d 115, 117 [76
P.2d 717].) To the same effect, see *People* v. *Barber,* 112
Cal.App.2d 333, 338 [246 P.2d 99]; *People* v. *Arbaugh,* 82
Cal.App.2d 971, 987-988 [187 P.2d 866]; *People* v. *Platnick,*
71 Cal.App.2d 767, 770 [163 P.2d 766]; *People* v. *Shaw,* 46
Cal.App.2d 768, 771-772 [117 P.2d 34]; *People* v. *King,* 8
Cal.App. 329, 331 [96 P. 916].

Nothing in the foregoing rule is inconsistent with *People* v.
*McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449],
*People* v. *Citrino, supra,* 46 Cal.2d 284, or *People* v. *De Leon,*
236 Cal.App.2d 530 [46 Cal.Rptr. 241], which merely reiterate
that unexplained possession is a strong circumstance tending
to show guilt but do not repudiate the concept that such pos-
session is not sufficient by itself to support a conviction. ''. . .
When possession is shown, however, the corroborating evi-
dence may be slight. . . .'' (*People* v. *Citrino, supra,* 46 Cal.
2d at p. 288.) In burglary cases, ''after proof of entry, the
sufficiency of the incriminating circumstances is a question
which belongs exclusively to the jury.'' (*People* v. *Sanchez,*
35 Cal.App.2d 231, 234-235 [95 P.2d 169].)

In the case at bench, there was evidence of one other
incriminating circumstance which, in conjunction with defend-
ant's possession of Mrs. Silva's brassiere and purse, was suffi-
cient to establish his guilt of burglarizing the home of her
parents-in-law. That additional circumstance consisted of the
fact that, in the Holloway burglary as well as in the Silva
burglary, the undergarments of females were stolen. (See *Peo-
ple* v. *Sanchez, supra,* 35 Cal.App.2d at pp. 235-236.) Since
defendant was shown beyond peradventure to have committed
the Holloway offense, the successive thefts of women's under-
garments was a peculiar behavior pattern which tended to
identify him as being also the perpetrator of the Silva crime.
(See *People* v. *Cavanaugh,* 44 Cal.2d 252, 265-266 [282 P.2d
53].) ''[T]he rule does not require that more than one other
similar crime be shown for that purpose.'' (*People* v. *Hous-
ton,* 219 Cal.App.2d 187, 192 [33 Cal.Rptr. 26].)

Defendant's final contention, applicable to count 1, is

that the trial court improperly instructed the jury on the law applicable to his case, the claimed error being that there was a failure to instruct on simple assault. The trial court did instruct on the definition and elements of assault with a deadly weapon. The defendant did not request an instruction on simple assault. Furthermore, there was no evidence to justify a simple assault verdict. If the defendant was guilty at all, he was guilty of the more serious offense. The contention is without merit. (See Witkin, Cal. Criminal Procedure (1963) Trial, § 480, p. 487; *People* v. *Morrison,* 228 Cal.App.2d 707 [39 Cal.Rptr. 874].)

On our own motion we now examine the sentences imposed on defendant to ascertain if the court's action in imposing concurrent sentences on counts 1 and 2 (assault on Mrs. Holloway with a deadly weapon and first degree burglary of her room) constituted double punishment prohibited by Penal Code section 654.

The factual issue as to defendant's intent and objective in entering Mrs. Holloway's room was one for the trial court to determine before imposing sentence, subject to appellate review of the sufficiency of the evidence to support that conclusion. (See *People* v. *Scott,* 247 Cal.2d 371, 376 [55 Cal.Rptr. 525]; *People* v. *Williams,* 244 Cal.App.2d 658, 662-663 [53 Cal.Rptr. 392]; *People* v. *Hernandez,* 242 Cal.App.2d 351, 360 [51 Cal.Rptr. 385]; *Downs* v. *State of California,* 202 Cal.App.2d 609, 614-615 [20 Cal.Rptr. 922].) However, there was no evidence that the assault upon Mrs. Holloway was other than incidental to defendant's objective to enter her room and commit theft. Hence defendant cannot be punished for both offenses. (See *People* v. *Helms,* 242 Cal.App.2d 476, 487 [51 Cal.Rptr. 484]; *People* v. *Sipult,* 234 Cal.App.2d 862, 870 [44 Cal.Rptr. 846]; *People* v. *Niles,* 227 Cal.App.2d 749, 755 [39 Cal.Rptr. 11]; *People* v. *Collins,* 220 Cal.App.2d 563, 579 [33 Cal.Rptr. 638] [facts recited in earlier opinion, 117 Cal.App.2d at pp. 178-180]; cf. *People* v. *Scott, supra,* 247 Cal.App.2d 371.)

Since first degree burglary carries a more severe maximum penalty than assault with a deadly weapon, as between counts 1 and 2 defendant can only be punished under count 2, the burglary charge. (See Pen. Code, §§ 245, 459, 460, subd. 1, 461, subd. 1, 671; *People* v. *Collins, supra,* 220 Cal.App.2d at pp. 580-581; cf. *In re McGrew,* 66 Cal.2d 685, 689 [58 Cal. Rptr. 561, 427 P.2d 161].)

Neither the concurrency of the sentences imposed under

counts 1 and 2, nor defendant's failure to urge this double punishment point on appeal, precludes this court from modifying the judgment on the first count by setting aside the sentence imposed under it. (See *People* v. *Moore*, 249 Cal.App. 2d 509, 513-514 [57 Cal.Rptr. 449]; *People* v. *Garrison*, 246 Cal.App.2d 343, 356 [54 Cal.Rptr. 731].)

The judgment is modified by striking therefrom the sentence for assault with a deadly weapon (count 1). As modified, the judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.