[Crim. No. 4918. Second Dist., Div. Two. Sept. 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN COLLINS, Defendant and Appellant.

John Collins, in pro. per., and Cary G. Branch, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—On May 20, 1952, appellant was convicted of burglary, grand theft and two counts of assault with a deadly weapon; a further charge of prior conviction of robbery and serving of a term of imprisonment therefor was also found to be true.

Upon appeal the judgment was affirmed on April 3, 1953, in *People* v. *Collins*, 117 Cal.App.2d 175 [255 P.2d 59]; the California Supreme Court denied a hearing and defendant

appealed to the United States Supreme Court which on October 12, 1953, dismissed the appeal but treated it as a petition for writ of certiorari and denied the same (346 U.S. 803 [74 S.Ct. 33, 98 L.Ed. 334]). Defendant, whose application for appointment of an attorney to represent him on appeal had been denied before the hearing on the merits, presented on May 21, 1963, a petition for recall of remittitur and appointment of counsel to represent him on appeal, relying upon *Douglas* v. *State of California*, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811], decided March 18, 1963. In that case the United States Supreme Court itself vacated the judgment of division three of this court for failure to appoint counsel and remanded the cause for further proceedings not inconsistent with the opinion. Complying with the implied direction of said case and of *Gideon* v. *Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799] and *Vasquez* v. *District Court of Appeal*, 59 Cal.2d 585 [30 Cal.Rptr. 467, 381 P.2d 203] (cf. *In re Martin*, 58 Cal.2d 133, 142 [23 Cal.Rptr. 167, 373 P.2d 103]) we, on May 28, 1963, recalled the remittitur, vacated the judgment, appointed present counsel to represent appellant throughout further stages of the cause, and gave him time to present a brief on behalf of appellant. This was done and the cause is now before us for a second time upon the merits and after the lapse of over 10 years.

Appointed counsel does not question the sufficiency of the evidence but "refers to the Opening Brief heretofore filed by the appellant in Pro Per and incorporates herein, by this reference, as a part of this brief, all of the Points and Arguments set out in said Brief. In addition thereto, present Counsel set out the following Points on Appeal, and contends that the judgment should be reversed and a new trial granted because of the following errors." The opinion prepared by the late Presiding Justice Moore (*People* v. *Collins*, *supra*, 117 Cal.App.2d 175) fully and satisfactorily covers all the points previously raised and we adopt it as the opinion of the court as presently constituted, addressing ourselves particularly to the points now brought forward by counsel, which points overlap to some extent the subject matter covered by the former opinion. Those points are: "The appellant was denied the right to aid of counsel" and "The trial judge was guilty of prejudicial misconduct" and "The judgments as pronounced were in excess of the jurisdiction of the trial court because they were within the prohibition required by section 654 of the Penal Code."

Concerning the matter of counsel the former opinion says: "Appellant complains that a deputy public defender was appointed to represent him; that in his consultation with the lawyer, the latter undertook to persuade him to plead guilty; that when the deputy declined to act unless appellant would abstain from examining the witnesses, the officer on his own motion was relieved from further representing appellant. The latter now complains that the court did not offer to appoint other counsel and that such conduct is a denial of due process of law. In support of his proposition appellant cites discussions with the deputy that are not a part of the record. They cannot therefore be considered. . . . It has been judicially declared that the public defender of Los Angeles County and his staff have higher than average ability in defending criminal actions. (*People* v. *Adamson*, 34 Cal.2d 320, 333 [210 P.2d 13].) As to the 'refusal' of the trial court to appoint another lawyer to represent appellant, the court was not obliged to force appellant to accept the service of other counsel after his unjustifiable refusal to permit the deputy public defender to conduct the trial. Relative to his complaint that the court refused to appoint other counsel, it is pertinent to observe that on the very first day of the trial the judge said to appellant, 'You refused counsel and I tried to talk you into having counsel and if you had counsel you would know how to go about this . . . I was trying to do my best to have you to have counsel and you refused it . . . that is why I told you before you should have an attorney and that is why I tried my best to get you to have an attorney . . . this is a serious charge that is against you and I tried to insist on your getting an attorney. . . .' In reply thereto appellant gave no indication that he desired the appointment of counsel but displayed an apparent zeal to act on his own behalf. From such record it is clear that appellant's complaint suggests no ground for reversal. Where a defendant requests permission to conduct his own trial, he cannot complain of the court's failure to appoint counsel for him. (*People* v. *Acosta*, 114 Cal.App.2d 1, 4 [249 P.2d 316].)'" (*People* v. *Collins, supra,* 117 Cal.App.2d 175, 182-183.)

So many novel concepts of due process have evolved in the past 10 years that we feel it proper to supplement what was said by the court in 1953, but before doing so we will refer to certain federal court decisions of which counsel have stipulated the court may take judicial notice, namely, *Collins* v. *Heinze* (D.C.N.D.Cal.) 125 F.Supp. 186, and *Collins* v.

*Heinze* (9th Cir.) 217 F.2d 62 (certiorari denied in 349 U.S. 940 [75 S.Ct. 786, 99 L.Ed. 1268]).

In 1954 this appellant sought in the federal court release from Folsom penitentiary upon writ of habeas corpus. The record of the proceedings in the state court, including the testimony, was placed before the district court. The judge said, at pages 188-190 of 125 F.Supp.: ''The contention that petitioner was denied right to counsel is not sustained by the record.... Petitioner would not cooperate with his counsel and therefore the deputy public defender asked for and was relieved from further duty to represent petitioner. Thereafter he conducted his own case, this in the face of strong advice offered by the trial judge that he should have counsel. He did not ask that the court appoint other counsel and appeared content to conduct his own case. Counsel could not be forced upon him against his will.

''A constitutional right, like any other right, may be waived; and while the constitutional right to have the benefit of counsel is a valuable and sacred one, and one that should never be denied or abridged, it is not a compulsory right; or, to put it in plain and simple words, if the defendant does not desire the assistance of counsel, but prefers to act as his own lawyer, he has that right also.

''The appointed counsel could not be expected and should not be required to continue to carry this heavy burden of responsibility handicapped, as he would have been, by a dissatisfied client.

''Petitioner was not a stranger in criminal courts. He had previously suffered a felony conviction and a term of imprisonment. This is a circumstance that may properly be considered in determining whether he understandingly waived counsel. *Johnson* v. *Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357].

''The following is taken from the record of proceedings had at the time the Public Defender was discharged:

'' 'Mr. Powell. If your Honor please, I now move to advance this matter, which is on the trial calendar for the 13th of May, for the purpose of making a motion to be relieved as counsel for the defendant.

'' 'The Court. Is that your desire, Mr. Collins, to substitute some other attorney in place of the Public Defender?

'' 'The Defendant. Yes.

'' 'Mr. Powell. Well, he indicates to me that he has no private counsel but that he does not desire my services in any

sense of the word. He won't cooperate with me in preparing for his defense and has told me that he has no desire to be represented by my office or myself.

" 'The Court. Very well. Is that what you want to do?

" 'The Defendant. Yes. I would rather defend myself.

" 'The Court. Very well. The Public Defender is ordered relieved and the record will so show.'

"Petitioner disputes the correctness of the above. Be that as it may, his own statement contained in his 'Answer to Court's Letter And Respondent's Supplement And Motion To Subpoena Record On Appeal' may be accepted for the purpose of this court's ruling. Therein he states,

" 'It is the petitioner's contention in this respect that the Public Defender, Elias Powell, told the petitioner that he would defend him only upon the condition that he avoid questioning the witnesses, and when the petitioner told him that he had a right to defend in person as well as with counsel the Public Defender moved to be relieved as petitioner's counsel.

" 'The petitioner told the trial judge that he wanted to reserve the right to cross-examine the witnesses, and that he had no confidence in the Public Defender because he objected to this procedure. Whereupon the judge accepted the Public Defender's motion to be relieved as counsel for the petitioner.'

"It should be also noted petitioner in his brief to District Court of Appeal said,

" 'On March 24th, in the Superior Court at Santa Monica, without the consent of the Appellant who was satisfied with Public Defender, John Cole, who represented him at the preliminary examination, Public Defender Elias Powell was appointed as Counsel for the Appellant. Mr. Powell consulted with the Appellant in the crowded attorney room at the Los Angeles County Jail. It was there that Mr. Powell tried to persuade Appellant to plead guilty. Mr. Powell told Appellant that he would defend him only upon the condition that Appellant avoid questioning the witnesses and let him (Mr. Powell) handle the entire matter. Appellant told Mr. Powell, that he would not give up his right to defend in person as well as with counsel.'

"Thus it is clear that petitioner insisted that he had and intended to reserve and exercise the right to examine witnesses at the trial and in general inject himself into the proceedings. Counsel appointed to defend a person accused of crime

has a heavy responsibility and a solemn duty. It would have been his obligation to determine what questions should or should not be asked, what objections and motions should be made and, in general, all procedural steps in the case. He would be unable to properly discharge his duty thus encumbered. Few lawyers would care to carry on under such embarrassing and frustrating conditions; none should be required to do so. Quite properly he asked and was given his discharge. The court does not recognize anyone in the conduct of the case for a party thereto except his attorney of record, where the party does not appear in propria persona. A party may appear in his own proper person, or by attorney. By insisting that it was his right 'to defend in person' and stating that he would insist in interrogating witnesses at the trial, petitioner effectively and understandingly waived his right to counsel.

"The right to counsel may under peculiar circumstances include the right to have appointed counsel discharged or other counsel substituted. Should it appear that failure to do so would impair the right, it would be the duty of the court to so act. But the court's duty so to do arises only when there is a satisfactory showing that the right would be substantially impaired if the court failed to act. Though the accused, if sui juris, has the absolute right of proceeding without counsel, and the right to discharge qualified counsel without reason, yet if he does so, his act is tantamount to a waiver of the right. Furthermore, by insisting that he would exercise the functions and duties of his counsel and manage his own defense he thereby by implication waived counsel.

"As noted, on appeal and for the first time the claim was made that petitioner's dissatisfaction with his appointed counsel was due to the latter's advice that petitioner plead guilty. There is no statement that this advice was either improper or unsound. Subsequent events prove that the advice was proper. It may not be said that the giving of the advice showed incompetence. In any event, this was not stated by the petitioner to the judge as a reason for his dissatisfaction. His reason given was 'I would rather defend myself.' If he lacked confidence in the Public Defender or was for some other reason dissatisfied with that official's services, the basis thereof was not stated. Under such circumstances I do not conceive it to be the duty of the court to appoint some other lawyer to serve him. Petitioner in discharging the competent appointed lawyer under the facts appearing here, including

his statement to the court just quoted, in effect conveyed to the court a desire to waive counsel and to conduct his own defense. The waiver may be as it must be here, implied. *In re Connor*, 16 Cal.2d 701 [108 P.2d 10].

"The claims put forth in the instant petition which were advanced on the appeal from the judgment were there considered and adequately disposed of. The record of the proceedings at the trial have been here reviewed. The conclusions reached by the reviewing court are all sound and well within the range of its authority. The guilt of petitioner is amply supported by the evidence. He was afforded a fair trial. No unusual circumstances prompting the issuance of the writ appear. This Court is satisfied that petitioner's federal constitutional rights have been protected."

The Court of Appeals at page 62 of 217 F.2d: "On the grounds and for the reasons stated in its opinion, *Collins* v. *Heinze* (D.C.N.D. Cal.) 125 F.Supp. 186, the judgment of the District Court is affirmed."

We have before us by way of augmentation of the record a transcript of the proceedings of April 21, 1952; the portion pertinent to the question of relieving counsel without appointing a new attorney to represent defendant is quoted in the opinion of the federal district court as above set forth. It is to be observed that on March 31, 1952, defendant, while represented by the the deputy public defender, had entered a plea of not guilty to each count of the information and trial was then set for May 13th. The matter of withdrawal of that attorney was brought up on April 21, 1952, some three weeks before trial. The situation therefore is substantially the same as the one considered by us in *People* v. *Sherman*, 211 Cal. App.2d 419 [27 Cal.Rptr. 353]. We there said: "Appellant's second contention is that the court abused its discretion and denied appellant's constitutional rights in permitting him to discharge the public defender as his attorney and to conduct the trial on his own behalf. It is said in argument that he relied upon entrapment as a defense and the judge failed to ascertain whether he, a layman, was competent to present such a complicated issue.

"This motion to substitute appellant for the public defender was made on March 16, 1961. Appellant had not yet entered his plea and that matter had been continued to March 16. . . . On that same day, and not before, he entered his plea of not guilty. This was 14 days after the public defender was relieved of responsibility in the case. . . .

"Clearly, the court's duty, if any, to probe into defendant's ability to handle a defense of entrapment, had not arisen at the time he permitted defendant to take over his own defense. Defendant was then in the same position (so far as this matter is concerned) as if he had never been represented by a lawyer. *People* v. *Mattson,* 51 Cal.2d 777, 788 [336 P.2d 937] : ' "In a criminal action the defendant is entitled: ... 2. To be allowed counsel as in civil actions, or to appear and defend in person and with counsel." (Pen. Code, § 686.)

" 'The foregoing sections accord the accused not only a right to counsel but also a right to represent himself if he so elects. Except in certain situations not here pertinent, the court cannot force a competent defendant to be represented by an attorney. [Citations.]' At page 794: '[T]he defendant during the proceedings before the magistrate and the trial court has as a matter of absolute right but two choices in the matter of a court-appointed attorney: he can accept representation by counsel (as most defendants with the ability to employ counsel have the good sense to do) or he can elect to represent himself. If he makes the latter election, he assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken; he is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented by counsel.'

"We do not consider the cited case of *People* v. *Shroyer,* 203 Cal.App.2d 478, 482 [21 Cal.Rptr. 460] (no petition for hearing in Supreme Court filed), to be authority requiring the trial judge to make the suggested inquiry at the initial stages of the ordinary case wherein there has been nothing to suggest defendant's lack of competence to represent himself.

"That the rules stated in that case do not apply to a situation such as the one here presented appears from *People* v. *Thomas,* 58 Cal.2d 121, 131-132 [23 Cal.Rptr. 161, 373 P.2d 97], wherein the court said: ' "A defendant who, with an intelligent conception of the consequences of his act, declines the aid of counsel prior to or at the commencement of his trial, is not entitled thereafter to interrupt and delay the hearing at any stage he deems advantageous merely to interpose a demand for legal assistance. [Citations.] When petitioner stated at the time of his arraignment that he did not need an attorney, the court was justified in taking him at his word [citations]. His attitude, both at that time and at the

commencement of the trial, was equivalent to a final declination of counsel...." (*In re Connor*, 16 Cal.2d 701, 709 [108 P.2d 10].) '...

"The burden rests upon the appellant to establish, when the point is raised first on appeal, that he did not competently and intelligently waive his right to counsel. (*People* v. *Feeley*, 179 Cal.App.2d 100, 106 [3 Cal.Rptr. 529]; *Moore* v. *Michigan*, 355 U.S. 155, 161-162 [78 S.Ct. 191, 2 L.Ed.2d 167.)" (Pp. 426-428 of 211 Cal.App.2d.)

Appellant has attempted no such proof here. In fact, he was insistent upon examining witnesses himself and thus sharing, if not usurping, one of the most important duties of trial counsel—a right he clearly did not have. (*People* v. *Lopez*, 60 Cal.2d 223, 255 [32 Cal.Rptr. 424, 384 P.2d 16].) Moreover, he did not ask for appointment of counsel to replace the public defender but expressed the desire to act for himself. That this was intelligently done fairly appears. He had been convicted of robbery in 1933 and served a prison sentence therefor. Doubtless he acquired some familiarity with court procedure through that experience. But more important is the fact that examination of the record at bar discloses that, while subject to infirmities necessarily incident to a layman's conduct of a trial, he cross-examined intelligently (even if not wisely) and at great length. Moreover, he quickly apprehended explanations made to him by the court and when disposed followed them but more often rejected such help.

The cases upon which counsel relies are not contrary to the views just expressed. *People* v. *Kemp*, 55 Cal.2d 458, 463 [11 Cal.Rptr. 361, 359 P.2d 913]; *In re James*, 38 Cal.2d 302, 313 [240 P.2d 596]; *People* v. *Chesser*, 29 Cal.2d 815, 821 [178 P.2d 761, 170 A.L.R. 246]; and *Johnson* v. *Zerbst*, 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed 1461, 1467, 146 A.L.R. 357, 362], stand for the proposition that "the court cannot accept a waiver of counsel from anyone accused of a serious public offense without first determining that he 'understands the nature of the charge, the elements of the offense, the pleas and defenses which may be available, or the punishments which may be exacted.' " (*In re James, supra,* 38 Cal.2d 302, 313.) But they are subject to this qualification: "As in *People* v. *Mattson* (1959), *supra,* 51 Cal.2d at pp. 788-789 [1], 794 [18], the entire record establishes that defendant was fully aware of his situation when he insisted upon representing himself, and the court was not required to demand

that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer." (*People* v. *Linden,* 52 Cal.2d 1, 18 [338 P.2d 397].)

As above indicated and as stated in the *Sherman* case, *supra,* the burden rests upon the appellant to show that "he did not intelligently and understandingly waive his right to counsel." (*Moore* v. *Michigan,* 355 U.S. 155, 161-162 [78 S.Ct. 191, 2 L.Ed.2d 167, 172].) The record before us seems not complete in that respect. The trial judge early in the trial said to defendant: "You refused counsel, and I tried to talk you into having counsel, and if you had counsel you would know how to go about this. I can't try this case and be a judge at the same time. I am trying to do my best, but I have to do justice to the People as well as to you, and I was trying to do my best to have you have counsel, and you refused." Again: "You can't establish it this way. That is why I told you before you should have an attorney, and that is why I tried my best to get you to have an attorney." And: "I tried to get you to have an attorney and tried to insist upon your getting an attorney, and you absolutely refused." There is nothing in the transcript to refute these statements; the supplemental reporter's transcript does not cover that area; and the record is in such state that these statements of the court must be presumed to be true (see, *In re Connor,* 16 Cal.2d 701, 708 [108 P.2d 10]), with the result that the burden resting on defendant has not been discharged.

Of course, the defendant is entitled to counsel at the time of arraignment for judgment, as held in *In re Levi,* 39 Cal.2d 41, 46 [244 P.2d 403], but this appellant had gotten rid of his attorney before the trial and gave no intimation of his desire for one at the time of sentencing. "When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence." (*Johnson* v. *Zerbst, supra,* 304 U.S. 458, 468 [58 S.Ct. 1019, 82 L.Ed. 1461, 1468, 146 A.L.R. 357, 363-364].)

Instances of inept or unsuccessful moves made by defendent during the trial do not spell incompetency to conduct his own defense. Most of them were no more amateurish than exhibitions on the part of inexperienced lawyers that the trial judges witness day by day. The language of *People* v. *Harmon,* 54 Cal.2d 9, 15 [4 Cal.Rptr. 161, 351 P.2d 329], is here pertinent: " 'Except in certain situations not here per-

tinent, the court cannot force a competent defendant to be represented by an attorney.' [Citations.] When defendant in this court requested termination of the appointment of his counsel we were 'not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer' [citation] and, having competently elected to represent himself, defendant 'assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken' [citation]." See also, *People* v. *Linden, supra,* 52 Cal.2d 1, 18; *People* v. *Green,* 191 Cal.App.2d 280, 284-285 [12 Cal. Rptr. 591].

The charge of prejudicial misconduct of the trial judge is based mainly upon incidents which involved procedural matters and if objectionable would normally be classified as mere error rather than misconduct.

One specification, however, seems to be wrongful denial of an inspection of certain evidence before trial. This incident occurred on April 21, 1952, over four years before the right of defendant to examine documents in the possession or under the control of the prosecution was recognized and established in this state (*People* v. *Riser,* 47 Cal.2d 566 [305 P.2d 1], December 31, 1956; *Powell* v. *Superior Court,* 48 Cal.2d 704 [312 P.2d 698], June 21, 1957), so the defendant's request and the court's ruling are to be read in the light of the then existing state of the law.

The colloquy to which counsel refers occurred at the time defendant took over the defense in propria persona and was as follows: "THE DEFENDANT: I would like to make a motion that I would like to have examined the evidence— THE COURT: What do you mean? THE DEFENDANT:— taken in the case. THE COURT: You have already received a copy of the transcript. MR. POWELL: I would like to state that on the second day of April of this month I delivered the transcript personally to the defendant. He is still in possession of it, isn't that right, Mr. Collins? And I hereby show that I am handing to the defendant a copy of the Information and file in this matter, (handing same to defendant). THE DEFENDANT: May I be allowed to examine the data and the evidence in the case? THE COURT: What data do you want? THE DEFENDANT: Well, the— THE COURT: (Int'g) I don't know what you are talking about. THE DEFENDANT: Particularly the data taken at the

Venice Police Station. THE COURT: You have a right to subpoena it for the time of trial if you want it. THE DEFENDANT: May I examine it before then? THE COURT: No. You can subpoena it for the time of trial. That is where you are making a fool out of yourself by discharging your attorney. He can look at these things and interview witnesses and you can't do it. THE DEFENDANT: I have no confidence in the Public Defender. THE COURT: That is all right then. That is all.''

There was no sufficient, because no intelligent, demand for an inspection; ''the data taken at the Venice Police Station'' was too vague to be meaningful; there was no reference to any existing statements of defendant or of witnesses, or to any police reports or anything else to clarify the matter when the judge said, ''I don't know what you are talking about.'' We find no error, much less misconduct, in the court's ruling.

Other specifications of misconduct of the court relate to rulings upon evidence and comments of the judge in connection therewith designed to keep the record straight, to obviate confusion on the part of the jury and overcome obduracy of defendant at various stages of the case, particularly near its close when everyone was becoming edgy as a result of apparently interminable insistence of defendant upon canvassing minute details of immaterial phases of the case. We find no misconduct of the judge. Moreover, there was no objection or assignment of misconduct, hence no right to assert the claim on appeal. (*People* v. *Kobey,* 105 Cal. App.2d 548, 560 [234 P.2d 251]; *People* v. *Brown,* 200 Cal. App.2d 111, 117 [19 Cal.Rptr. 36].)

The judge earnestly endeavored to keep the case going forward, to confine it to material matters and to assist defendant notwithstanding his obvious reluctance at times. Penal Code section 1044: ''It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.'' True, the judge displayed irritation in certain instances, but we are confident that it did not prejudice defendant, for (as the jurors doubtless observed) he seemed to deliberately overtry his case and his own testimony was so weak and unconvincing that it would take a good deal of doing to find a miscarriage of justice here.

We further point out that due process is "a matter of substance, not of form. It does not guarantee against judicial error, and it does not provide any guaranty against unjust or erroneous decisions, or assure uniformity of judicial decision, or guarantee any particular decision; it is not a guaranty that every court ruling shall be correct, but it is a guaranty that the fundamental principles of justice shall not be violated." (16A C.J.S. § 569 (1), p. 564.) To the same effect see, *Housing Authority* v. *Arechiga,* 203 Cal.App.2d 159, 166 [21 Cal.Rptr. 464]; *Datta* v. *Staab,* 173 Cal.App.2d 613, 621-622 [343 P.2d 977]; *Market Street Ry. Co.* v. *Railroad Com. of State of Cal.,* 324 U.S. 548, 562 [65 S.Ct. 770, 89 L.Ed. 1171, 1182]; *Gryger* v. *Burke,* 334 U.S. 728, 731 [68 S.Ct. 1256, 92 L.Ed. 1683, 1687]; *In re Los Angeles County Pioneer Soc.,* 40 Cal.2d 852, 865 [257 P.2d 1]; *Melancon* v. *Superior Court,* 42 Cal.2d 698, 706 [268 P.2d 1050]; *Hughes* v. *Heinze* (9th Cir.) 268 F.2d 864, 866, 869.

Present counsel now raises the point that section 654, Penal Code, was violated in the sentencing of appellant. It provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. . . ."

*Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], interpreting this statute, says at page 18: 'The proscription of section 654 against multiple punishment of a single act, however, is not limited to necessarily included offenses." At page 19: "Few if any crimes, however, are the result of a single physical act. 'Section 654 has been applied not only where there was but one "act" in the ordinary sense ... but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' (*People* v. *Brown, supra,* p. 591 [of 49 Cal.2d]).

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."

The matter is explained more fully in *People* v. *McFar-*

*land,* 58 Cal.2d 748, 760 [26 Cal.Rptr. 473, 376 P.2d 449]: "The principles governing the application of section 654 were clarified by this court in *Neal* v. *State of California,* 55 Cal.2d 11, 18 et. seq. [9 Cal.Rptr. 607, 357 P.2d 839]. It was there pointed out, upon an analysis of several earlier decisions, that the prohibition of the statute against double punishment applies not only where 'one "act" in the ordinary sense' is involved but also where there is a 'course of conduct' which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654; that the divisibility of a course of conduct depends upon the intent and objective of the defendant; and that if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one. (See also *Seiterle* v. *Superior Court,* 57 Cal.2d 397, 400 [20 Cal.Rptr. 1, 369 P.2d 697].) It was held in *Neal* that, where arson is the means of attempting murder and is merely incidental to the primary objective of committing murder, the defendant cannot be punished for both arson and attempted murder." ■

Also, at pages 762-763: "With respect to the procedure to be followed on appeal where double punishment has been erroneously imposed, it should be stressed that section 654 proscribes double punishment, not double conviction; conduct giving rise to more than one offense within the meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished. (*People* v. *Chessman,* 52 Cal.2d 467, 497 [341 P.2d 679].) The appropriate procedure, therefore, is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned. (See *People* v. *Brown,* 200 Cal. App.2d 111, 118 [19 Cal.Rptr. 36].) . . .

"Of the two offenses involved here, second degree burglary is the one subject to the greater punishment. (Pen. Code, §§ 461, 489.) Accordingly, it is necessary to reverse the judgment insofar as it relates to punishment for grand theft. . . .

"The judgment is reversed insofar as it imposes a sentence for grand theft, and in all other respects it is affirmed." To the same effect see, *People* v. *Brown,* 200 Cal.App.2d 111, 118 [19 Cal.Rptr. 36]; *Downs* v. *State of California,* 202 Cal. App.2d 609, 614 [20 Cal.Rptr. 922].

■ Counsel for appellant says: "In the case at bar the record shows that the intent and objective of the defendant was to enter the premises of Mr. and Mrs. Burger for the purpose of committing theft. The assaults with a deadly wea-

pon on Mr. Burger and on Mrs. Burger were merely incidental to and a part of the main objective. Since burglary in the first degree held the greater maximum punishment than the other offenses for which defendant was convicted the jurisdiction of the trial court was exhausted after the pronouncement of judgment on Count II—the burglary count. The other sentences on Counts I, IV and V pronounced to run consecutive should therefore be set aside as in violation of section 654 of the Penal Code.'' We consider this to be correct. Perusal of the statement of facts found in the former opinion (117 Cal.App.2d 178-180) verified the statement that appellant's intent and objective in entering the Burger premises was the commission of a theft and the assaults upon Mr. and Mrs. Burger were merely incidental to that main objective.

The case of *In re Chapman*, 43 Cal.2d 385, 389-390 [273 P.2d 817], is urged upon us by the Attorney General as authority for the proposition that while the sentence for grand theft (Count IV) should be set aside, nevertheless those based upon counts of assault with a deadly weapon (Counts I and V) should not be reversed because they constituted wholly separate acts. We are unable to adopt this view. The case of *In re Chapman* obviously adheres to the one act doctrine, as is evidenced by the following quotations: ''This section prohibits the double punishment of an accused when he has committed but a single act even though such act violates two or more separate sections of the Penal Code.'' (P. 388.) ''The applicability of section 654 depends upon whether a separate and distinct act can be established as the basis of each conviction.'' (P. 389.) ''It is only when the two offenses are committed by the same act or when that act is essential to both that they may not both be punished.'' (P. 390.)

Without overruling *Chapman*, the court in *Neal* v. *State of California, supra*, 55 Cal.2d 11, 19, has virtually done so, as shown by the quotations hereinabove set forth. This is even clearer from consideration of the opinion in *People* v. *McFarland, supra*, 58 Cal.2d 748, 760-763, as appears from our quotations of same, *supra*, particularly from this explanation of the *Neal* decision: ''It was there pointed out, upon an analysis of several earlier decisions, that the prohibition of the statute against double punishment applies not only where 'one ''act'' in the ordinary sense' is involved but also where there is a 'course of conduct' which violates more than one statute and comprises an indivisible transaction punishable

under more than one statute within the meaning of section 654; that the divisibility of a course of conduct depends upon the intent and objective of the defendant; and that if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (P. 760.)

It follows that the sentence upon each count other than the one most severely punishable should be reversed. This appellant was convicted of two assaults with a deadly weapon (Counts I and V), one burglary in first degree (Count II) and one grand theft (Count IV), and the allegation of a prior conviction of robbery was found to be true. Defendant was sentenced on each of said counts to the state prison for the term prescribed by law; Count I, assault with deadly weapon (a lesser offense included in Count I) and Count II (burglary in first degree) to run consecutively; Count IV (grand theft) to run consecutively with Counts I and II; and Count V (assault with a deadly weapon) to run consecutively with Counts I, II and IV.

Section 489, Penal Code, prescribes as punishment for grand theft "imprisonment in the county jail for not more than one year or in the state prison for not more than 10 years." Under section 245, Penal Code, an assault with a deadly weapon is punishable by "imprisonment in the state prison not exceeding 10 years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment." Section 461 prescribes that one convicted of burglary in the first degree shall be imprisoned "in the State prison for not less than five years"; no maximum is prescribed by the statute. Hence, section 671 becomes operative: "Whenever any person is declared punishable for a crime by imprisonment in the state prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, punishment of such offender shall be imprisonment during his natural life subject to the provisions of part 3 of this code."

Concerning the effect of this section the Supreme Court said, in *People* v. *Harmon, supra,* 54 Cal.2d 9, 16: "By the terms of the applicable statutes a defendant sentenced under section 213 of the Penal Code to imprisonment in a state prison 'for not less than five years' is under a life sentence unless and until the Adult Authority sees fit to relieve him of the life sentence by limiting (subject to the provisions of the above referred to Penal Code sections) the punishment to

imprisonment for a span of years. In the case of a life term convict who the Authority does not believe merits a lesser term it may, and customarily does, act by simply refraining from fixing his term at a span of years. Since by statute he is already serving a life term there is no occasion for the Authority to re-declare the fact.''

In such circumstances the ''conviction of the less severely punishable offense should be reversed.'' (*People* v. *Brown, supra,* 49 Cal.2d 577, 593.) *People* v. *McFarland, supra,* 58 Cal.2d 748, 763, says: ''Of the two offenses involved here, second degree burglary is the one subject to the greater punishment. (Pen. Code, §§ 461, 489.) Accordingly, it is necessary to reverse the judgment insofar as it relates to punishment for grand theft.''

The term of punishment is to be fixed by the Adult Authority, and counsel have advised us that this has not been done, but comes before the Authority again during the week of September 23, 1963. It is the conviction which is most severely punishable that is to be sustained (*People* v. *Bales,* 189 Cal.App.2d 694, 705 [11 Cal.Rptr. 639]; *People* v. *Griffin,* 209 Cal.App.2d 125, 130 [25 Cal.Rptr. 667]), while the other counts which fall within section 654 are to be reversed.

As appellant is now under a life sentence for burglary under Count II of the information, the judgment and sentence upon said count are affirmed; the judgment is reversed as to Counts I, IV and V.

Fox, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 13, 1963.